Lauretta R. BECKHAM,
et al., Appellants,

v.

BOARD OF EDUCATION OF JEF-
FERSON COUNTY, Kentucky,
et al., Appellees.

Nos. 93–SC–967–I, 93–SC–968–DG.

Supreme Court of Kentucky.

March 24, 1994.

John Frith Stewart, Dennis Franklin Janes, David William Hupp, John Christopher Sanders, Segal, Isenberg, Sales, Stewart, Cutler and Tillman, Louisville, for appellants.

Kenneth S. Handmaker, Mark S. Fenzel, Middleton & Reutlinger, Louisville, for appellees Bd. of Educ. of Jefferson County, KY.

Jon L. Fleischaker, Deborah H. Patterson, Ann Michelle Turner, Wyatt, Tarrant & Combs, Louisville, for appellees Courier–Journal and Louisville Times Co. and R.G. Dunlop.

LAMBERT, Justice.

The issue here is standing. We must determine whether a party affected by the decision of a public agency to release records pursuant to the Kentucky Open Records Act, KRS 61.870, *et seq.*, has standing to contest the agency decision in court; or whether the only parties who may be heard are the agency and the person making the Open Records request.

By letters dated October 13, 1992, and October 23, 1992, the Courier–Journal and its reporter R.G. Dunlop, requested of the Board of Education of Jefferson County, pursuant to the Kentucky Open Records Act, inspection of various documents pertaining to the employment of appellants and other present and past employees of the Board of Education. Broadly requested were documents used by the Board to impose discipline upon appellants, their employment histories, and all grievances filed against them. The requesting parties characterize their request as seeking access to complaints filed and disciplinary actions taken including decisions

to take no disciplinary action. On learning of the document request, appellants sought a commitment from the Board, on grounds of preventing an unwarranted invasion of their privacy, that the records would not be furnished. On refusal of the Board to make such a commitment with respect to any of the documents, appellants commenced litigation in the Jefferson Circuit Court to prohibit release of the documents sought.

On appellants' motion, a restraining order was issued at the commencement of litigation, but was dissolved less than one month thereafter and the documents were ordered furnished. The Board of Education presented the documents in question to the trial court for *in camera* review in categories I, II, and III. It expressed the belief that category I and II documents should be furnished but that category III documents should not be produced inasmuch as they did not represent final action on the part of the Board. Significantly, neither appellants nor appellees, the Courier–Journal and Dunlop, have had an opportunity to examine the documents in question nor approve or disapprove the categorization by the Board. However, these parties candidly acknowledge the probability that some of the documents requested should be produced and that others may be excluded from production pursuant to KRS 61.878. In its final order the trial court gave short shrift to the exclusions and required production of all documents. It said

> The right of privacy does not extend to matters with which the public has a legitimate interest or concern. These people are school teachers entrusted with the care

and control of the children of this community. The public has an absolute right to know into whose hands the Board of Education chooses to place the children of this community.

While the trial court's order did not expressly state that an *in camera* inspection of all documents had transpired, at least some of the documents were described with sufficient particularity to indicate that they had been reviewed. Moreover, as this Court's decision in *Kentucky Board of Examiners of Psychologists v. Courier–Journal and Louisville Times Co.*, Ky., 826 S.W.2d 324 (1992), mandates such a review,[1] we construe the trial court's order as reflective of its opinion after having reviewed the documents. While the trial court did not expressly address the issue of standing, by having decided the merits of appellants' motion for a temporary injunction, it appears to have acknowledged their right to be heard.

Appellants appealed to the Court of Appeals and in that court obtained interlocutory relief pursuant to CR 65.08. As such, the Board of Education was enjoined from releasing the documents pending appellate review of the merits. In its opinion, the Court of Appeals held that appellants lacked standing to challenge the Board's decision to release the documents.[2] Reviewing the statutory provisions and decisions from other jurisdictions, the court held that appellants were without standing.

> [I]t was the intent of our legislature to provide remedies for those deprived of access to public documents. The remedies provided for in KRS 61.880 and 61.882 are for persons denied access to records. The

---

**1.** The proper methodology for balancing what was termed "the antagonistic interests" was described as follows:

[G]iven the privacy interest on the one hand and, on the other, the general rule of inspection and its underlying policy of openness for the public good, there is but one available mode of decision, and that is by comparative weighing of the antagonistic interests.

Necessarily, the circumstances of a particular case will affect the balance. The statute contemplates a case-specific approach by providing for de novo judicial review of agency actions, and by requiring that the agency sustain its action by proof. Moreover, the question of whether an invasion of privacy is "clearly unwarranted" is

intrinsically situational, and can only be determined within a specific context. *Kentucky Board of Examiners of Psychologists v. Courier–Journal and Louisville Times Co.*, Ky., 826 S.W.2d 324, 327–28 (1992).

**2.** Reluctantly, we conclude that the Board decided to comply with the request. Without some assurance from the Board, appellants were without any alternative other than litigation. The Board could have prevented premature and ill-defined litigation by having been more definitive with respect to the documents it believed should be released and those it believed were protected by KRS 61.878.

exemptions in KRS 61.878 simply do not provide appellants a right or mechanism to prohibit disclosure of the objectionable information.

*Beckham v. Board of Education of Jefferson County, Kentucky,* Ky.App., 92–CA–2860–MR, slip op. at 8 (December 3, 1993).

Appellants next sought relief pursuant to CR 65.09 and CR 76.33. They requested and obtained an order from this Court's Chief Justice staying the opinion of the Court of Appeals until their motion for discretionary review could be heard. Discretionary review was granted and the actions consolidated in this Court.

■ Appellants claim standing to challenge release of the requested documents by virtue of two statutes. First, they point to KRS 61.878(1) whereby certain public records are excluded from application of the Act. Among the records excluded are those "containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy." Likewise excluded under KRS 61.878(1)(h)–(i) are documents preliminary to final agency action. As authority for enforcement of the privacy right created in KRS 61.878(1), appellants point to KRS 61.-882(1) which grants the circuit court "jurisdiction to enforce the provisions of [the Act] by injunction or other appropriate order on application of any person." These provisions, appellants contend, give them a right to seek prevention of disclosure, for without them the privacy right would be meaningless.

For their contention that appellants lack standing, appellees, the Courier–Journal and Dunlop, point to the policy of the Open Records Act and to the particularity of the Act with respect to the manner of requesting and furnishing the records including the right of persons wrongfully denied access to have costs and attorneys' fees.

The General Assembly finds and declares that the basic policy of KRS 61.870 to 61.884 is that free and open examination of public records is in the public interest and the exceptions provided for by KRS 61.878 or otherwise provided by law shall be strictly construed, even though such examination may cause inconvenience or embarrassment to public officials or others.

KRS 61.871. They contrast this with the absence of a mechanism for persons wishing to block disclosure. According to appellees, the right to claim the privacy exemption contained in KRS 61.878 rests exclusively with the agency custodian of the records and even authorizes it to release records which are exempt. *See* OAG 92–75. For further support for their arguments, appellees rely upon the decisions of other jurisdictions construing similar but not identical Open Records Acts.

■ As with any case involving statutory interpretation, our duty is to ascertain and give effect to the intent of the General Assembly. We are not at liberty to add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the language used. *Gateway Construction Co. v. Wallbaum,* Ky., 356 S.W.2d 247 (1962). With these principles in mind, we will address the issue of appellants' standing.

The unambiguous purpose of the Open Records Act is the disclosure of public records even though such disclosure may cause inconvenience or embarrassment. KRS 61.-871. An extensive mechanism has been created for exercise of the right of inspection and imposes upon the record custodian the duty to respond appropriately. KRS 61.872. Public agencies are authorized to adopt rules and regulations but may not impose requirements which have the effect of thwarting access. KRS 61.876. In the event the request for access is denied, the agency must state the specific exemption which authorizes withholding the record and a party denied access may seek review by the Attorney General and the burden of proof is upon the agency. KRS 61.880.

Despite its manifest intention to enact a disclosure statute, the General Assembly determined that certain public records should be excluded from disclosure. Among such records are documents "containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy."

KRS 61.878(1). Also excluded are "Preliminary drafts, notes, correspondence with private individuals, other than correspondence which is intended to give notice of final action of a public agency;" and "Preliminary recommendations, and preliminary memoranda in which opinions are expressed or policies formulated or recommended." KRS 61.-878(1)(h)–(i). From the exclusions we must conclude that with respect to certain records, the General Assembly has determined that the public's right to know is subservient to statutory rights of personal privacy and the need for governmental confidentiality. A cursory examination of KRS 61.878 reveals an extensive list of matters excluded from public access, and this also suggests an absence of legislative intent to create unrestricted access to records.

We turn now to the statute which is dispositive of the controversy. KRS 61.882 contains five subsections and undoubtedly subsections (2) through (5) provide remedies in the event disclosure is denied. However, subsection (1) broadly grants the circuit court of the county where the agency has its principal place of business or where the record is maintained jurisdiction "to enforce the provisions of KRS 61.870 to 61.884, by injunction or other appropriate order on application of any person." Try as we may, this Court is at a loss to discover any meaning in subsection (1) other than its plain meaning. *Kentucky Board of Examiners of Psychologists*, 826 S.W.2d at 327. Perhaps by resort to rules of construction we could conclude, as urged by appellees, the Courier–Journal and Dunlop, that the foregoing is inconsistent with the tenor of the Act and should be interpreted only as a remedy for denial of access. This was the view of the Court of Appeals, "the remedies provided for in KRS 61.880 and 61.882 are for persons denied access to the records," but the language used is without any such limitation. If the General Assembly had intended such a construction, it could have been easily accomplished by slight modification of the language. Moreover, we discern a certain harmony in the Act in its extensive remedy provisions for denial of access and the limited remedy to contest disclosure. It would appear that the General Assembly sought to promote disclosure by devising easy means toward that end, but left the door ajar for those who seek to prevent disclosure by granting them a litigation remedy to enforce the exclusions.

Our recent decision in *Kentucky Board of Examiners of Psychologists, id.,* while not dispositive of the precise issue, is instructive as to our view of the Open Records Act and the approach which should be taken toward its implementation. The newspaper sought all documents relating to a psychologist who had been charged with acts of sexual misconduct within his professional relationships. Prior to final administrative adjudication of the charges, the psychologist surrendered his license and agreed not to seek re-licensure or engage in mental health services. Recognizing the policy of the Act favoring disclosure, this Court nevertheless held that KRS 61.-878(1)(a), the personal privacy exclusion, was "an independently viable exception, not subordinate to any other, and not restricted to preliminary materials or non-final matters." *Id.* We recognized the antagonism between the policy favoring disclosure and the privacy exemption and concluded that a comparative weighing of the antagonistic interests was the only appropriate method of resolution. We concluded by saying:

> The information sought touches upon the most intimate and personal features of private lives. Mindful that the policy of disclosure is purposed to subserve the public interest, not to satisfy the public's curiosity, and that the Board has in this case effectually promoted the public interest in regulation, and that there is a countervailing public interest in personal privacy, here strongly substantiated, we hold that further disclosure of information contained in the public record in this case would, as a matter of law, constitute a clearly unwarranted invasion of personal privacy.

*Id.* at 328–329.

As demonstrated by the foregoing, we have recognized the personal privacy exclusion as an independent right of persons who were not even parties to the litigation and permitted their right to be asserted by the agency. We also recognized that the personal privacy exclusion was of sufficient impor-

tance to overcome the disclosure bias of the Act and that public interest and public curiosity were not always synonymous. Having so highly regarded the personal privacy exclusion, it would be anomalous if we should disregard plain statutory language to conclude that an affected party who may possess a right to have documents excluded lacks standing to assert that right.

This Court's most recent decision on the issue of standing involved a claim by the City of Louisville for damages and injunctive relief against the trustees of the Policeman's Retirement Fund and a bank, a brokerage firm, and investment advisors. In *City of Louisville v. Stockyards Bank & Trust Co.,* Ky., 843 S.W.2d 327 (1992), it was contended that the City lacked standing, despite its duty to guarantee payment of pension benefits in the event of a shortfall of income and contributions, by virtue of a statute which granted the governing body of the fund exclusive authority with respect to investment of fund assets. We reiterated the prevailing Kentucky standard for determining standing as "a judicially recognizable interest in the subject matter" which is not "remote and speculative" and held that notwithstanding the statutory provision, the City had standing to challenge the alleged improper conduct of the fund's governing body. The Court reasoned that any other construction would result in the absurdity that the fund trustees were not subject to any oversight even by a party having a duty to indemnify against mismanagement. Having found standing in the face of a statute which failed to confer it expressly, it would be wholly inconsistent to deny standing when a statute affirmatively declares it.

Accordingly, we hold that the Court of Appeals erred in its conclusion with respect to appellant's standing. Appellants, having commenced litigation prior to release of the information sought, were entitled to be heard on their exclusion claims and entitled to appellate review of the merits in the Court of Appeals. Inasmuch as the trial court's order requiring disclosure constitutes findings of fact with respect to the non-applicability of the exclusions claimed, such findings of fact should be reviewed by the Court of Appeals pursuant to the "clearly erroneous" standard found in CR 52.01.

It is unnecessary to engage in a further review of substantive principles as the decisions of this Court and the Court of Appeals interpreting the exclusion statute are sufficient. *See Kentucky Board of Examiners of Psychologists v. Courier–Journal and Louisville Times Co.,* Ky., 826 S.W.2d 324 (1992); *University of Kentucky v. Courier–Journal and Louisville Times Co.,* Ky., 830 S.W.2d 373 (1992); *Kentucky State Board of Medical Licensure v. Courier–Journal and Louisville Times Co.,* Ky.App., 663 S.W.2d 953 (1983); *City of Louisville v. Courier–Journal and Louisville Times Co.,* Ky.App., 637 S.W.2d 658 (1982). For the foregoing reasons, the opinion of the Court of Appeals is reversed and this cause remanded to the Court of Appeals for review of appellants' claims of trial court error with respect to disclosure of the documents produced by appellee, the Board of Education.

STEPHENS, C.J., and REYNOLDS and SPAIN, JJ., concur.

STUMBO, J., concurs by separate opinion in which LEIBSON and WINTERSHEIMER, JJ., join.

STUMBO, Justice, concurring.

I concur in the holding that appellants herein have standing to contest the agency decision. I, however, would take the next step and review on the merits the trial court's decision requiring disclosure. To do otherwise is to further delay resolution of this matter, which is not in keeping with either the intent of the Kentucky Open Records Act (to provide immediate access to public records) or judicial economy.

LEIBSON and WINTERSHEIMER, JJ., join in this concurring opinion.