Thomas A. HOY, Appellant,

v.

KENTUCKY INDUSTRIAL REVITALI-ZATION AUTHORITY and General Electric Company, Appellees.

No. 94–SC–949–TG.

Supreme Court of Kentucky.

Oct. 19, 1995.

Gregory A. Bölzle, L. Jay Gilbert, Woodward, Hobson & Fulton, Louisville, for Appellant.

Robert W. Griffith, Brooks D. Kubik, E. Scott Fruehwald, Stites & Harbison, Louisville, R. Douglas Martin, Cabinet for Economic Development, Frankfort, for Appellee, Kentucky Industrial Revitalization Authority.

Donald L. Cox, Mary Janice Lintner, Lynch, Cox, Gilman & Mahan, P.S.C., Louisville, for Appellee, General Electric Company.

STUMBO, Justice.

This is an appeal from summary judgment denying the relief Appellant sought under the Open Records Act, KRS 61.870 *et seq.*

On February 5, 1993, the General Electric Company ("GE"), filed an application with the Kentucky Industrial Revitalization Authority ("KIRA") pursuant to KRS 154.26–010 for investment tax credits to support the renovation of its laundry machine manufacturing facility in Louisville, Kentucky. Pursuant to KRS 154.26–080(5), an analysis of GE's operations was undertaken by the accounting firm of Coopers & Lybrand and a confidential report was supplied to KIRA which recommended approval of the application.

On May 18, 1993, the date of a public hearing concerning GE's application, the Appellant, Thomas A. Hoy, a Louisville attorney, made an Open Records request for GE's completed application and the full report prepared by Coopers & Lybrand. It was later learned that Hoy represented Whirlpool Corporation, a competitor of GE's in the domestic appliance industry. On May 21, 1993, KIRA denied Hoy's request as the records were excluded from public disclosure pursuant to KRS 61.878(1)(a), (c), (h) and (i).

On appeal, the Kentucky Attorney General affirmed KIRA's decision to withhold those portions of the application and report which dealt with "GE's private financial affairs." OAG 93–ORD–85, at p. 5. However, the Attorney General noted that the entirety of the documents did not contain such information and ordered KIRA to disclose those portions of the documents relevant to GE's eligibility for the tax incentive program, "specifically, its need for the economic revitalization program, the projected amount and timing of capital investment of GE in the economic revitalization project, and the projected number of employees to be retained and to be hired in the future." *Id.*

KIRA appealed to the Franklin Circuit Court with GE intervening to assert a privacy interest in the documents. Hoy filed a counterclaim asserting that all of the documents should be produced.

In 1994, with the appeal still pending, the General Assembly amended the Open Records Act, retroactive to July 15, 1992, which specifically exempted from the Act's disclosure requirements records submitted in conjunction with an application for inducements pursuant to KRS Chapter 154. On October

18, 1994, the Franklin Circuit Court granted summary judgment for KIRA and GE, holding that the application and report fell within the Open Records exception as amended in KRS 61.878(1)(c)(2)(b).

Hoy appealed the decision of the Franklin Circuit Court. On January 10, 1995, the appeal was ordered transferred from the Court of Appeals to this Court.

We affirm the lower court's opinion, holding that Hoy is locked in by the wording of the Open Records Act as amended by the Legislature in 1994.

The 1994 amendments to KRS 61.878(1) change subsection (c) to exclude the following records from disclosure:

1. Upon and after July 15, 1992, records confidentially disclosed to an agency or required by an agency to be disclosed to it, generally recognized as confidential or proprietary, which if openly disclosed would permit an unfair commercial advantage to competitors of the entity that disclosed the records;

2. Upon and after July 15, 1992, records confidentially disclosed to an agency or required by an agency to be disclosed to it, generally recognized as confidential or proprietary, which are compiled and maintained:

   a. In conjunction with an application for or the administration of a loan or grant;

   b. In conjunction with an application for or the administration of assessments, incentives, inducements, and tax credits as described in KRS Chapter 154;

   c. in conjunction with the regulation of commercial enterprise, . . . .

   d. For the grant or review of a license to do business.

■ The Appellant argues that the lower court erred when it applied KRS 61.878(1)(c)(2)(b) as an absolute bar to the disclosure of GE's application and the accounting report. We do not agree. We stated in *Beckham v. Bd. of Educ. of Jefferson Cty.*, Ky., 873 S.W.2d 575 (1994), another action in which we were asked to analyze the exceptions to disclosure contained within the Open Records Act, that "[d]espite its manifest intention to enact a disclosure statute, the General Assembly determined that certain public records should be excluded from disclosure." *Id.* at 577. Although the current version of KRS 61.878(1) had not yet been enacted at the time of *Beckham*, we nonetheless concluded, upon an examination of that provision then in effect, that "[f]rom the exclusions we must conclude that with respect to certain records, the General Assembly has determined that the public's right to know is subservient to statutory rights of personal privacy and the need for governmental confidentiality." *Id.* at 578. In analyzing the Open Records Act as amended in 1994, we are guided by the principle that "under general rules of statutory construction, we may not interpret a statute at variance with its stated language." *Layne v. Newberg*, Ky., 841 S.W.2d 181, 183 (1992). The stated language of KRS 61.878(1)(c)(2)(b) seems quite clear: an entity seeking tax credits pursuant to KRS Chapter 154 need not disclose confidential information submitted in applying for such credits.

■ The financial information required to be submitted by GE in its application to KIRA detailed the company's business and revitalization project. Under administrative regulations adopted by KIRA, such information included a financial history of the corporation, projected cost of the project, the specific amount and timing of capital investment, copies of financial statements and a detailed description of the company's productivity, efficiency and financial stability. 307 KAR 3:010 § 3. This information was then analyzed by a consulting firm which, under the language of KRS 154.26–080(5), had the authority to conduct additional investigation into GE's eligibility for the tax credits. It does not take a degree in finance to recognize that such information concerning the inner workings of a corporation is "generally recognized as confidential or proprietary" and falls within the wording of KRS 61.878(1)(c)(2). As we stated in *Commonwealth v. Shivley*, Ky., 814 S.W.2d 572, 573 (1991), "under the rule of liberal construction, the words employed in the statute must be given their ordinary meaning."

Furthermore, the specific wording of KRS 61.878(1)(c)(2)(b) is clearly on point with the class of documents herein involved. GE sought investment tax credits through KIRA, which was established by and administered its program through KRS Chapter 154. The information submitted by GE to KIRA was done in conjunction with said application for the tax credits. We have stated that "[w]here the words of the statute are clear and unambiguous and express the legislative intent, there is no room for construction or interpretation and the statute must be given its effect as written." *Fiscal Court v. Dept. of Public Advocacy,* Ky., 794 S.W.2d 162, 163 (1990). By amending the Open Records Act to include documents submitted pursuant to KRS Chapter 154, it is evident to us that the Legislature sought to protect those companies which participate in the revitalization and development of industry in Kentucky, for as the Legislature has noted, "it is in the best interest of the Commonwealth to induce the revitalization of existing manufacturing facilities within the Commonwealth...." KRS 154.26–015. KIRA argues, and we agree, that but for the 1994 Amendment to the Opens Record Act, companies would be reluctant to apply for investment tax credits for fear the confidentiality of financial information would be compromised, thus undermining the success of the economic revitalization program upon which "the general welfare and material well-being of the citizens of the Commonwealth depends...." KRS 154.26–015.

■ This opinion does not address the argument of Appellant that KRS 61.878(1)(c)(2)(b) is unconstitutional pursuant to § 177 of the Kentucky Constitution. That argument was first raised in this Court and, thus, was not preserved for our review. *Taxpayer's Action Group v. Madison Cty. Bd.,* Ky.App., 652 S.W.2d 666 (1983).

For the reasons set forth above, summary judgment denying disclosure of confidential or proprietary information submitted in conjunction with an application for tax credits pursuant to KRS Chapter 154 is affirmed.

STEPHENS, C.J., and FUQUA, LAMBERT, LEIBSON and REYNOLDS, JJ., concur.

WINTERSHEIMER, J., concurs in result only by separate opinion.

WINTERSHEIMER, Justice, concurring.

I concur in the result achieved by the majority in this particular case as presented to the Court.

However, I believe that Section 177 of the Kentucky Constitution which prohibits the General Assembly from making any gifts to private corporations is clearly superior to any interpretation of KRS 61.878(1) and (2) which would permit the concealment of any public records. Any denial of public access to public information in this regard is a blatant constitutional violation. Any expectation of privacy or confidentiality is waived when an entity applies for a $19 million tax credit which involves the public treasury composed of taxpayer money.

I do not believe that KRS 61.878(1) and (2) must necessarily be declared unconstitutional, but we need only recognize that the constitution requires something different in this specific situation.

*Hayes v. State Property and Buildings Com'n,* Ky., 731 S.W.2d 797 (1987), determined that it was not unconstitutional for the General Assembly to extend financial incentives to private corporations so long as the expenditure of public money effectuated a valid public purpose. Generally I believe this statute should be construed so as to give meaning to the words "public records ... shall be subject to inspection" when so ordered by a court of competent jurisdiction.

It is with some reluctance and considerable misgivings that I concur in the result achieved in this case.