# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JULY 9, 2020
NOT TO BE PUBLISHED

**Supreme Court of Kentucky**

2018-SC-000321-MR

TIMOTHY NOLAN                                                      APPELLANT


V.
ON APPEAL FROM CAMPBELL CIRCUIT COURT
HONORABLE KATHY LAPE, SPECIAL JUDGE
NO. 17-CR-00487


COMMONWEALTH OF KENTUCKY                                           APPELLEE



**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

Timothy Nolan pled guilty to twenty-one crimes, including sixteen related to human trafficking, and was sentenced to a total of twenty years in prison by the Campbell Circuit Court. Pursuant to his plea agreement with the Commonwealth, Nolan entered conditional pleas to three charges of human trafficking of an adult, reserving the right to appeal those convictions on the grounds the human trafficking statute is unconstitutional. Nolan now contends that Kentucky Revised Statute (KRS) 529.100, the statute proscribing human trafficking, is unconstitutionally vague as applied to him. Nolan also raises two post-plea claims of error: the trial court violated his right to choose private counsel and the trial court erred by amending the judgment to correct an error that was judicial rather than clerical. Upon review, we affirm the Campbell Circuit Court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A Campbell County grand jury indicted Timothy Nolan on thirty counts, mostly felonies involving sexually related crimes, with several of the charges involving minors.[1] Under the terms of a plea agreement, the Commonwealth agreed to amend fourteen of the charges and to dismiss nine others.[2] In exchange, Nolan entered an unconditional guilty plea to some of the charges but as to three counts of Human Trafficking of an Adult (counts 13, 21, and 24), each a Class C felony carrying a ten-year sentence, he entered conditional pleas pursuant to RCr[3] 8.09.[4] Those pleas were conditioned on Nolan's right to

---

[1] A Campbell County grand jury originally indicted Nolan on twenty-two counts. It later added eight more in a superseding indictment. The thirty charges consisted of eight Class B felonies, seventeen Class C felonies, three Class D felonies and two misdemeanors (one Class A, one Class B). Nineteen charges were brought under KRS 529.100 Human Trafficking (five involving a minor, one involving criminal attempt), and four charges were brought under KRS 530.064 Unlawful Transaction with a Minor, First Degree. Single charges were brought under KRS 530.065 Unlawful Transaction with a Minor, Second Degree; KRS 530.070 Unlawful Transaction with a Minor, Third Degree; KRS 510.040 Rape, First Degree; KRS 435.090 Rape of Female over Twelve; KRS 510.090 Sodomy, Third Degree; KRS 524.050 Tampering with a Witness; and KRS 529.020 Prostitution.

[2] Of the nine dismissed charges, one was dismissed without prejudice.

[3] Kentucky Rule of Criminal Procedure.

[4] Nolan entered unconditional guilty pleas to one count of Unlawful Transaction with a Minor under 16, Controlled Substance, with twenty years to serve on the Class B felony; four counts of Promoting Human Trafficking of a Minor, with ten years to serve on each Class C felony; two counts of Unlawful Transaction with a Minor under 18, Controlled Substance, with ten years to serve on each Class C felony; one count of Criminal Attempt to Human Trafficking of a Minor, with ten years to serve on the Class C felony; eight counts of Criminal Attempt to Human Trafficking of an Adult, with twelve months to serve on each Class A Misdemeanor; one count of Unlawful Transaction with a Minor, Third Degree, with twelve months to serve on the Class A misdemeanor; and one count of Prostitution, with ninety days to serve on the Class B Misdemeanor. Nolan entered a guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), on three charges: Unlawful Transaction with a Minor under 18, Controlled Substance (Count 7, as amended); Criminal Attempt to Human Trafficking

2

challenge the three convictions on the grounds the human trafficking statute, KRS 529.100, is unconstitutionally vague. In total, Nolan pled to one Class B felony, ten Class C felonies, nine Class A misdemeanors, and one Class B misdemeanor with all the sentences running concurrently with each other for a total sentence of twenty years in prison. The trial court engaged Nolan in a full colloquy before accepting his plea and sentencing him in accord with the plea agreement.

Additional facts are presented below as necessary.

## ANALYSIS

Nolan raises three issues on appeal: 1) KRS 529.100 is unconstitutionally void for vagueness as applied to him; 2) the trial court improperly interfered with his constitutional right to counsel of his choosing when it appointed a public defender for the sentencing phase without an indigency hearing; and 3) the trial court erred by amending the judgment to correct an error that was not clerical in nature. These issues are addressed in turn.

### I.    KRS 529.100 is not void for vagueness as applied to Nolan.

A Campbell County grand jury charged Nolan with violating KRS 529.100, Human Trafficking, "when he intentionally subjected another person, [respectively, adult victims J.T., Ca.S., and S.G],[5] to engaging in commercial

---

of an Adult (Count 17, as amended); and Criminal Attempt to Human Trafficking of a Minor (Count 25).

[5] The Commonwealth used initials to reference the victims. We do likewise.

sexual activity through the use of force, fraud, or coercion" under counts 13, 21, and 24 of the indictment. The plea agreement included an addendum of the facts of the case. Per the agreement, the facts for the three challenged charges are:

> [Count 13:] From August 2016 through September 2016, the defendant subjected J.T. to Human Trafficking after she had run away from a residential drug treatment program, taking her to stay with him, and paying her to engage in sexual conduct with him on a daily basis, and threatening to turn her in to law enforcement if she did not engage in the sexual conduct for money.
>
> [Count 21:] From June 2011 through April 2016, the defendant subjected Ca.S. to Human Trafficking by telling her he would get her suboxone to "get clean," but instead gave her money to buy heroin knowing she was addicted, and threatened physical harm to her unless she agreed to engage in sexual conduct with him for money, and perform sexual acts which he photographed or filmed.
>
> [Count 24:] From 2012 through March 2016, defendant subjected S.G. to Human Trafficking by using physical force to keep her in his house when she wanted to leave, by threatening to turn her in for being behind paying child support, and knowing she was addicted to heroin, using physical force on her unless she engaged in sexual conduct with him for money, and perform[ed] sexual acts which he photographed or filmed.

Nolan contends that the Kentucky human trafficking law did not properly advise him that he could be convicted of human trafficking when he engaged in the foregoing conduct, his overarching argument being that he cannot be convicted of human trafficking when no one was "trafficked" to a third party. As discussed in greater detail *infra*, Nolan argues that the behaviors on which these three charges are based are not of the "engaging in commercial sexual activity through the use of force, fraud, or coercion" ilk, the behavior KRS 529.100 criminalizes as human trafficking, making the statute

4

unconstitutional as applied to him. Nolan also complains that KRS 529.100(1)'s language is circular, that it ambiguously redirects a reader to separate statutory definitions, and then to other definitions, rendering portions of the original definition useless and producing little, if any, clarity regarding the forbidden conduct. He also insists the definitions have an extremely broad sweep and undefined scope, allowing for and resulting in arbitrary application and enforcement. In short, Nolan criticizes the legislature's proscription of human trafficking on virtually every conceivable basis but in the end those criticisms do not equate to any constitutional infirmity.

The Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." "Due process requires that a criminal statute provide adequate [or fair] notice to a person of ordinary intelligence that his contemplated conduct is illegal, for 'no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *Buckley v. Valeo*, 424 U.S. 1, 77 (1976) (quoting *United States v. Harriss*, 347 U.S. 612, 617 (1954)); *accord Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972). "[A] statute which [forbids] an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. General Const. Co.*, 269 U.S. 385, 391 (1926) (citations omitted). "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct

is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement" by police officers, prosecutors, juries, and judges. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *accord Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (citing *Kolender); Commonwealth v. Foley*, 798 S.W.2d 947, 950-51 (Ky. 1990). It is sufficient if a statute sets out an "ascertainable standard." *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921).

> But this prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for "(i)n most English words and phrases there lurk uncertainties." *Robinson v. United States*, 324 U.S. 282, 286 (1945). Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid. *Cf. Nash v. United States*, 229 U.S. 373 (1913); *United States v. National Dairy Corp.*, 372 U.S. 29 (1963). All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden.

*Rose v. Locke*, 423 U.S. 48, 49–50 (1975) (parallel citations omitted). Thus, a "conviction or punishment fails to comply with due process if the statute or regulation under which it is obtained [wholly] 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). As always with constitutional challenges to our state statutes, we begin with the presumption that the challenged statute is constitutionally valid. *Caneyville Volunteer Fire Dep't v. Green's Motorcycle Salvage, Inc.*, 286 S.W.3d 790, 806 (Ky. 2009).

6

The statutory scheme at issue in Nolan's as-applied challenge encompasses KRS 529.100, codifying the offense of human trafficking; KRS 529.010's definitions for "human trafficking," and the "commercial sexual activity" and "force, fraud, or coercion," terms used to define human trafficking; and KRS 509.010(2)'s definition, referenced in KRS 529.010's "force, fraud, or coercion" definition.

KRS 529.100(1) states:[6]

> A person is guilty of human trafficking when the person intentionally subjects one (1) or more persons to human trafficking.[7]

KRS 529.010(5)[8] provides the definition for human trafficking, stating:

---

[6] The remainder of KRS 529.100 states:

(2)(a) Human trafficking is a Class C felony unless it involves serious physical injury to a trafficked person, in which case it is a Class B felony.

(b) If the victim of human trafficking is under eighteen (18) years of age, the penalty for the offense shall be one (1) level higher than the level otherwise specified in this section.

[7] The 2020 Kentucky General Assembly revised KRS 529.100(1) to include the definition of human trafficking within that subsection (KRS 529.100(2) was not amended) and revised KRS 529.010 by adding and altering some definitions. *See* 2020 Ky. Acts ch. 75 (approved April 2, 2020). The 2020 Ky. Acts ch. 75 revisions to the statutes cited herein are accordingly noted.

As amended, KRS 529.100(1) states:

A person is guilty of human trafficking when the person intentionally subjects one (1) or more persons to engage in:

(a) Forced labor or services; or

(b) Commercial sexual activity through the use of force, fraud, or coercion, except that if the person is under the age of eighteen (18), the commercial sexual activity need not involve force, fraud, or coercion.

[8] As amended, renumbered to KRS 529.010(7). 2020 Ky. Acts ch. 75.

"Human trafficking" refers to criminal activity whereby one (1) or more persons are subjected to engaging in:

    (a) Forced labor or services; or

    (b) Commercial sexual activity through the use of force, fraud, or coercion, except that if the trafficked person is under the age of eighteen (18), the commercial sexual activity need not involve force, fraud, or coercion.

KRS 529.010(2) defines commercial sexual activity, stating: "'Commercial sexual activity' means prostitution, regardless of whether the trafficked person can be charged with prostitution,[9] participation in the production of obscene material as set out in KRS Chapter 531, or engaging in a sexually explicit performance."[10]

KRS 529.010(4) provides the definition for force, fraud, or coercion, stating: "'Force, fraud, or coercion' may only be accomplished by the same means and methods as a person may be restrained under KRS 509.010."[11]

---

[9] KRS 529.020(1) codifies the offense of prostitution: "Except as provided in KRS 529.120, a person is guilty of prostitution when he engages or agrees or offers to engage in sexual conduct with another person in return for a fee."

[10] As amended, KRS 529.010(3) provides that "commercial sexual activity" means "(a) Any sex act, for which anything of value is given to, promised to, or received by any person; (b) Participation in the production of obscene material as set out in KRS Chapter 531; or (c) Engaging in a sexually explicit performance." 2020 Ky. Acts ch. 75.

[11] As amended, KRS 529.010(6) states:

"Force, fraud, or coercion" includes but is not limited to:

(a) The use or threat of force against, abduction of, restraint, or serious harm of an individual;

(b) The abuse or threatened abuse of law or legal process;

8

KRS 509.010 appears in the chapter of the penal code that codifies kidnapping and related offenses.

Finally, KRS 509.010(2) provides the means and methods applicable to the ways force, fraud, or coercion may be accomplished. It states in full:

> "Restrain" means to restrict another person's movements in such a manner as to cause a substantial interference with his liberty by moving him from one place to another or by confining him either in the place where the restriction commences or in a place to which he has been moved without consent. A person is moved or confined "without consent" when the movement or confinement is accomplished by physical force, intimidation, or deception, or by any means, including acquiescence of a victim, if he is under the age of sixteen (16) years, or is substantially incapable of appraising or controlling his own behavior.

Nolan particularly attacks two parts of the statute. He argues that the term "human *trafficking*," commonly understood to involve profiting from prostitution or the subjugation of an alleged victim to a third party, failed to provide notice to him that the conduct in which he engaged, providing money to his victims for sexual conduct, violated KRS 529.100. Nolan acknowledges

---

(c) Facilitating, controlling, or threatening to control an individual's access to a controlled substance;

(d) Knowingly destroying, concealing, removing, confiscating, or possessing, or attempting to destroy, conceal, remove, confiscate, or possess any actual or purported passport or other immigration documents or any other actual or purported governmental identification documents of the person or family member;

(e) Use of debt bondage; or

(f) The use of an individual's physical or mental impairment when the impairment has a substantial adverse effect on the individual's cognitive or volitional function.

2020 Ky. Acts ch. 75.

that the definition of "commercial sexual activity" encompasses "prostitution" which contains an element of commerce, but claims it cannot be reasonably said that an individual is trafficked for purposes of "commercial sexual activity" without some effort on the part of the trafficker to obtain something of value from a third party given that the purpose of human trafficking legislation generally is to criminalize compelled, involuntary labor or activity in the commercial sex trade. Simply put, he asserts that the Commonwealth could not reasonably expect him to be on notice that he might violate KRS 529.100 by trafficking an individual to himself.

Nolan also argues that KRS 529.100 is circular on its face and that tracking relevant definitions across the penal code chapters provides little clarity to the conduct KRS 529.100 forbids. He argues that the "force, fraud, or coercion" element of human trafficking suffers from a fatal lack of clarity as the General Assembly did not provide any definition for these words individually, and instead, relies upon another statute, leaving it unclear how to apply KRS 509.010's language. He asserts, for instance, that the question remains as to whether the Court should apply the dictionary definitions for "force, fraud, or coercion" as the terms are not defined in KRS 529.010 or simply look to the first sentence of KRS 509.010 and restrict the "means" of accomplishing force, fraud, or coercion to a "substantial interference with [the victim's] liberty" achieved "by moving [the victim] from one place to another or by confining [the victim] either in the place where the restriction commences or in a place to which [the victim] has been moved without consent." He believes

10

KRS 529.010(4) could be read to adopt "restraint" as the definition instead of looking to the full second sentence of KRS 509.010(2) which specifies that "[a] person is moved or confined 'without consent' when the movement or confinement is accomplished by physical force, intimidation, or deception." He also argues it would make no sense to just swap out KRS 529.010's "force, fraud, or coercion" terms with KRS 509.010's synonymous terms of "physical force," "intimidation," and "deception" contained in its second sentence.

The Commonwealth responds that KRS 529.100's statutory structure, relying on definitions in KRS Chapters 529 and 509 and on the plain meaning of words, is sufficiently clear to provide a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. We agree. Nolan may disagree with the General Assembly's chosen statutory structure, its cross-referencing of other definitions, and its choices with respect to how closely the human trafficking statute mirrors the federal and other states' trafficking legislation; but his disagreements and critiques do not render the statute void-for-vagueness.

Because the void-for-vagueness doctrine assesses whether a statute fails to define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited, that assessment implicates a number of statutory interpretation principles. Foremost is the rule that a statute's words, phrases, and definitions are to be given their plain and ordinary meaning as generally understood in the context of the matter under consideration. *Pearce v. Univ. of Louisville*, 448 S.W.3d 746, 749 (Ky. 2014)

11

(citation omitted); *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011) (citation omitted). Furthermore, "[w]e presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes." *Shawnee Telecom*, 354 S.W.3d at 551 (citations omitted). We consider Nolan's arguments in light of our statutory interpretation principles.

Although Nolan argues that KRS 529.100(1)'s language is ambiguous because it is circular, that is remedied with KRS 529.010(5) expressly defining human trafficking. *Id.*; *Rose*, 423 U.S. at 49–50. As to the definition of human trafficking, we find no ambiguity in its language or the language of the other definitional statutes upon which it relies. Also, a plain reading of KRS 509.010(2) reveals that an adult may be restrained by physical force, intimidation, or deception, which returning to KRS 529.010(4) means physical force, intimidation, or deception are the limited means and methods by which the human trafficker may accomplish force, fraud, or coercion of the victim. We cannot agree with Nolan that the interplay between KRS 509.010(2) and KRS 529.010(4) is ambiguous and could be interpreted in various ways. Lastly, being undefined by the legislature, the terms "force, fraud, and coercion" receive their common meaning. Nolan does not assert that these ordinary terms are ambiguous.

Thus, when focusing on the "commercial sexual activity" aspect of the human trafficking statute, the aspect relevant to Nolan's charges, KRS 529.100(1) informs that a person is guilty of human trafficking when the

12

person intentionally subjects one or more persons to engaging in prostitution through the use of force, fraud, or coercion accomplished by physical force, intimidation, or deception. Although KRS 529.100 and the related definitional statutes probably could have been written with greater precision (and indeed the statute was later amended to avoid some cross-referencing of other statutes),[12] that does not invalidate an otherwise unambiguous statutory scheme. *Rose*, 423 U.S. at 49–50. Furthermore, contrary to Nolan's suggestion, ambiguity does not arise simply because a reader needs to refer to multiple definitions. *Id.*; *Shawnee Telecom*, 354 S.W.3d at 551. Legislative bodies routinely adopt statutory definitions that are then referenced throughout subsequent statutes, avoiding the repetition of the same language in statute after statute.

"In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged." *United States v. Nat'l Dairy Prod. Corp.*, 372 U.S. 29, 33 (1963) (citation omitted). We conclude KRS 529.100 and the relevant definitions gave Nolan sufficient warning that the behavior contemplated and engaged in as to J.T., Ca.S., and S.G is unlawful human trafficking. *See, e.g., Stinson v. Commonwealth*, 396 S.W.3d 900, 907 (Ky. 2013).[13] Nolan could understand

---

[12] *See* 2020 Ky. Acts ch. 75's revisions to the statutory scheme.

[13] Stinson alleged that "position of authority" and/or "position of special trust" are not sufficiently defined by KRS 510.110(1)(d). However, pursuant to KRS 510.110(1)(d), the terms are defined in KRS 532.045. The Court held that the definitions were not vague as applied to Stinson and to the extent a facial challenge was proper, the definitions were not unconstitutionally vague as the definitions of

not only that by subjecting each victim to engaging in sexual conduct for money he would subject them to prostitution, but that furthermore, his contemplated behavior would subject each of them to prostitution through the use of force, fraud or coercion accomplished through physical force, intimidation, or deception – that is, he could understand threatening a victim with adverse legal consequences or physical harm if the victim did not engage in sex for money is unlawful. For J.T., who had run away from a residential drug treatment program, Nolan could easily understand that he could meet the force, fraud, or coercion element by coercing J.T. through intimidation, specifically by threatening to turn her into law enforcement if she did not engage in the sexual conduct for money. For Ca.S., Nolan could understand that he could meet the force, fraud, or coercion element through deception and intimidation by telling the heroin-addicted young woman that he would get her suboxone to "get clean," but instead giving her money to buy heroin, and threatening to physically harm her unless she agreed to engage in sexual conduct with him for money. And for heroin-addicted S.G., Nolan could readily understand that he could meet the force, fraud, or coercion element through physical force and intimidation by using physical force to keep S.G. in the house when she wanted to leave and by threatening to turn her in for being delinquent in her child support payments, and knowing she was addicted to

---

persons in positions of special authority and special trust utilized plain and ordinary language to lay out an extensive definition of who is included under the law.

14

heroin, by threatening physical force on her unless she engaged in sexual conduct with him for money.

Nolan presents various arguments to highlight the perceived deficiencies in the statutory language in an attempt to persuade this Court that the human trafficking statutory scheme should be interpreted as requiring an element of commerce involving interaction with a third party because a person of ordinary intelligence would necessarily understand human trafficking to involve a trafficker obtaining something of value from a third party. His arguments, *inter alia*, are based on a comparison of other jurisdictions' trafficking statutes and the legislative history of KRS 529.100, including the General Assembly's repeal of other sexual offense statutes at the time of enactment of the human trafficking statute. For example, Nolan compares the human trafficking statutory scheme to analogous provisions in the federal Trafficking Victims Protections Act (TVPA), 22 U.S.C. § 7101 *et seq.* (2000), and argues that in parts, the Kentucky statutes omit entirely the elements of commerce and labor, though these are essential elements in any common-sense understanding of "trafficking," and in fact, are required by the trafficking statute. He suggests it may be useful for this Court to compare the TVPA to KRS 529.100(1) and relevant definitions to understand just how deficient KRS 529.100 is as a human trafficking statute. For instance, the TVPA defines "commercial sex act" as "any sex act on account of which anything of value is given to or received by any person." 22 U.S.C. § 7102. Nolan acknowledges the Kentucky General Assembly departed from the TVPA by including behavior that is

15

arguably non-commercial in the area of commercial sexual activity, but contends it is likely that the General Assembly intended some element of commerce to apply.

We cannot find merit in any of these arguments. When considering a vagueness challenge, we are not concerned with whether a term is defined exactly as a person of ordinary intelligence would ordinarily expect it to be defined. Or stated another way, a statute may not be declared unconstitutionally vague simply because it uses terms in a manner perhaps unexpected by the ordinary person. "All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." *Rose*, 423 U.S. at 50. "The determination whether a criminal statute provides fair warning of its prohibitions must be made on the basis of the statute itself and the other pertinent law . . . ." *Bouie v. Columbia*, 378 U.S. 347, 355 n.5 (1964). A court may not "add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the language used." *Beckham v. Board of Educ.*, 873 S.W.2d 575, 577 (Ky. 1994). Furthermore, although urged otherwise by Nolan, we need not rely on extraneous sources to interpret KRS 529.100. "Only if the statute is ambiguous or otherwise frustrates a plain reading, do we resort to extrinsic aids such as the statute's legislative history; the canons of construction; or, especially in the case of model or uniform statutes, interpretations by other courts." *Shawnee Telecom*, 354 S.W.3d at 551 (citations omitted).

Given these constitutional guideposts and statutory construction principles, we conclude that KRS 529.100 is not unconstitutionally vague as applied to Nolan. Whatever merit, if any, his various arguments regarding perceived deficiencies in the statute may have, those concerns do not render the statute unconstitutional. Furthermore, to the extent Nolan raises a facial challenge, our determination that KRS 529.100 is not void for vagueness as applied to Nolan also results in our rejecting any facial challenge raised by Nolan. *Stinson*, 396 S.W.3d at 907 (citing *United States v. Mazurie*, 419 U.S. 544, 550 (1975)).

## II. The trial court did not improperly interfere with Nolan's right to counsel of choice.

Nolan entered his guilty plea on February 9, 2018. At the first scheduled sentencing hearing on March 29, 2018, Nolan's privately-retained counsel moved the trial court on Nolan's behalf to withdraw his guilty plea, asked for an evidentiary hearing on the matter, asked to withdraw due to a conflict with their client, and asked "that a public defender be requested for him [Nolan]." Nolan remained silent. In the course of this hearing, Nolan did clarify that he was dismissing his private attorneys. The trial court then recessed the hearing and reconvened shortly thereafter, appointing a public defender to represent Nolan on his motion to withdraw his plea, the basis for which Nolan felt he could not articulate until represented by other counsel. Notably, in providing information for his presentence investigation report, Nolan had represented that he did not have the financial resources to pay an attorney. An indigency

17

hearing was not held and an affidavit of indigency was not submitted at that point, however, the trial court provided Nolan the financial statement to complete in order for the court to continue the public defender's appointment. Furthermore, based upon the record's detail of Nolan's assets, the court ordered Nolan to pay a recoupment fee to the Department of Public Advocacy (DPA) for work it performed on his behalf. Nolan did not object to the appointment of the public defender to represent him on his motion to withdraw his plea.

After conferring with Nolan, the public defender provided to the court the grounds for Nolan's motion to withdraw the plea, one being that he could not pay any of the agreed upon $50,000 due at sentencing. The sentencing hearing, along with a hearing on the formally filed plea withdrawal motion, was then scheduled for May 4, 2018. The trial court also scheduled a forfeiture hearing for April 4, 2018, and advised Nolan that he must have counsel present and ready to proceed at that hearing to avoid further delay.

Nolan subsequently requested that he be made co-counsel and only co-counsel so he could be at sidebar conferences. Upon further inquiry by the court, he also stated he wanted to be able to make arguments before the court. The trial court then conducted a *Faretta*[14] hearing. Being satisfied that Nolan, a former district court judge and lawyer who represented he has kept up with changes in the rules of evidence and procedure, could be hybrid counsel, the

[14] *Faretta v. California*, 422 U.S. 806 (1975).

trial court explained that the hybrid counsel agreement with the DPA must detail the matters in which he would address the court.

At a conference two days before the forfeiture hearing, appointed counsel informed the trial court that it was unclear whether Nolan was an indigent person qualified to receive DPA's services; that the affidavit of indigency was not filed with the court because it appeared Nolan had assets, although they were not immediately available; and that Nolan asked for more time to engage private counsel for the forfeiture hearing. Nolan represented that his attempts to hire other counsel for the hearing had been unsuccessful. Early in the conference the trial court informed Nolan that the upcoming forfeiture hearing would not be delayed, and that without the entry of new private counsel he would proceed with the public defender. Nolan did not object to the public defender's representation during this conference, but he indicated he would continue his efforts to hire other counsel for the hearing, at least partially based upon the public defender's restricted role.

After discussion of Nolan's assets and the public defender's restricted role at a forfeiture hearing, the trial court set a hearing for freezing of assets for April 4, 2018. At that hearing, Nolan acted as lead counsel with shadow counsel present and an agreement was reached as to the manner in which the Commonwealth would be paid the money owed pursuant to the plea agreement. No forfeiture of property occurred in relation to the April 4 hearing. The public defender continued to represent Nolan on the plea withdrawal motion and at the sentencing hearing.

Nolan now argues that the trial court improperly interfered with his constitutional right to counsel of his choosing when it appointed the public defender without an indigency hearing. Nolan does not identify an objection to the appointment of DPA representation which preserved this argument, but instead relies upon the various discussions regarding whether Nolan qualified for DPA representation under KRS 31.120.[15] Even if Nolan's argument is sufficiently preserved, a premise subject to considerable doubt, his particular constitutional right to counsel argument is without merit.

> The Sixth Amendment guarantees "the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). Deprivation of that right is structural error that does not require a showing of prejudice or that the counsel defendant received was ineffective. *Id.* at 148. But, that right "is circumscribed in several important respects." *Id.* at 144 (quoting *Wheat v. United States*, 486 U.S. 153, 159 (1988)). Among those limitations is the trial court's discretion "in balancing the right to counsel of choice against the needs of fairness" and "the demands of its calendar." *Id.* at 152.

---

[15] KRS 31.120(1)(a) and (b) provide:

(1)(a) The determination of whether a person covered by KRS 31.110 is a needy person shall be deferred no later than his or her first appearance in court or in a suit for payment or reimbursement under KRS 31.211, whichever occurs earlier.

(b) The court of competent jurisdiction in which the case is pending shall then determine, with respect to each step in the proceedings, whether he or she is a needy person. However, nothing shall prevent appointment of counsel at the earliest necessary proceeding at which the person is entitled to counsel, upon declaration by the person that he or she is needy under the terms of this chapter. In that event, the person involved shall be required to make reimbursement for the representation if he or she later is determined not a needy person under the terms of this chapter.

20

*United States v. Powell,* 847 F.3d 760, 777-78 (6th Cir. 2017) (parallel citations omitted).

Citing these principles, Nolan contends that after the trial court allowed his trial counsel to withdraw, the court erred by appointing counsel on his behalf instead of allowing Nolan to locate counsel of his choice. However, Nolan never challenged the court's appointment of the public defender. He made no objection to the public defender's representation at any time, including the rescheduled sentencing hearing. Nolan did represent that he attempted, albeit unsuccessfully, to hire other counsel for the scheduled forfeiture hearing but he never rejected the representation provided by the DPA.

The Commonwealth, citing *Shegog v. Commonwealth,* 142 S.W.3d 101 (Ky. 2004), contends that a criminal defendant's right to private counsel of choice in not interfered with or denied simply because he is unable to hire private counsel and must proceed with a public defender. In *Shegog,* the defendant asked for a continuance less than one week before his scheduled jury trial so he could hire private counsel. *Id.* at 104. The trial court concluded that unless private counsel entered an appearance for Shegog prior to the scheduled trial date, the trial would proceed as scheduled. *Id.* at 105. Shegog appealed the trial court's decision, arguing that the trial court's failure to fully inquire into the conflict with his appointed attorney and permit him to obtain new counsel violated his rights under the Sixth Amendment. *Id.* This Court stated, "Importantly, the trial court did not deprive Appellant of the right

21

to secure private counsel of his own choosing. The trial court merely ruled that such counsel, if obtained, was required to enter an appearance prior to the scheduled trial date." *Id.* (internal citation omitted).

We agree, that like *Shegog*, this is not a case where the court interfered with a defendant securing the counsel of his choice. Nolan's private counsel were acting on Nolan's behalf when they requested permission to withdraw and for the trial court to appoint a public defender for their soon-to-be former client. The trial court granted that request to appoint the public defender, and Nolan ratified the request by remaining silent and then requesting hybrid counsel status. While Nolan was clear about his intent to dismiss his private counsel, he never said he wanted to dismiss appointed counsel. When Nolan stated his interest in hiring counsel for the forfeiture hearing, which the trial court's March 29, 2018 ruling anticipated, the trial court required Nolan to adhere to the planned hearing schedule and to timely deal with his plea withdrawal motion and associated asset management issues. Moreover, the hearing on Nolan's motion to withdraw his plea and to impose sentence was not scheduled for a month after Nolan dismissed private counsel. So, Nolan still had a full month to hire other private counsel between the April 4 hearing and the May 4 hearing on withdrawal of the plea and sentencing. Under these circumstances, the trial court in no way interfered with Nolan's Sixth Amendment right to private counsel and his alleged error, if preserved, is meritless.

## III. The trial court did not err by amending the judgment to correct a clerical error.

The trial court's Judgment and Sentence on Plea of Guilty was entered on May 24, 2018. Shortly thereafter, when Nolan moved the trial court for shock probation, an error in the trial court's judgment came to light. Specifically, the Department of Corrections had informed Nolan that it did not consider any of the offenses to be sexual offenses requiring participation in a Sex Offender Treatment Program or registration as a sex offender because the judgment did not explicitly state the human trafficking offenses were for commercial sexual activity. Since more than ten days had passed since entry of the judgment, the Commonwealth moved under RCr 10.10 to amend the judgment to correct a clerical error by adding the words "commercial sexual activity" to several of the counts. Nolan objected to this motion. The trial court agreed a clerical error occurred and amended the judgment accordingly. On appeal, Nolan maintains his argument that the trial court did not make an oral finding at the sentencing or plea hearing that the relevant convictions were for "commercial sexual activity," thus making the written amendment a wholly new addition to the sentencing order. We disagree.

A trial court generally loses power to amend its judgment ten days after its entry. *Winstead v. Commonwealth*, 327 S.W.3d 479, 485-86 (Ky. 2010). However, the court may amend a clerical error as opposed to judicial errors. RCr 10.10 provides that "[c]lerical mistakes in judgments . . . arising from oversight or omission may be corrected by the court at any time on its own

23

initiative or on the motion of any party . . . ." *Machniak v. Commonwealth* provides guidance for determining whether an error is clerical or judicial:

> [A] discrepancy between a trial court's intended sentence and the final judgment is a clerical error where the intended sentence was explicitly expressed by the trial court and fully made known to the parties, and such is readily apparent from the record of the sentencing hearing, with no credible evidence to the contrary.

351 S.W.3d 648, 654 (Ky. 2011).

As described *supra*, a human trafficking conviction involves either "forced labor or services" or "commercial sexual activity." KRS 529.010(5). Nolan's September 14, 2017 indictment included, among other things, nineteen counts of human trafficking, human trafficking of a minor, and criminal attempt human trafficking of a minor. All of those counts included the language "commercial sexual activity." The written plea agreement, signed by Nolan, failed to include the words "commercial sexual activity" in referencing the amended charges, but the facts for the human trafficking-related convictions involved sexual activity in exchange for payment of money or drugs, which constitutes "commercial sexual activity." During the plea colloquy, the trial court read the facts of each count summarized in the plea agreement and Nolan either admitted he engaged in the conduct for each count or admitted there was evidence sufficient to convict him of each count.

The written plea agreement also expressly required Nolan to register as a lifetime sex offender (consistent with the requirement for the amended offenses of Promoting Human Trafficking of Minor (Counts 1-4) and the amended offense of Criminal Attempt Human Trafficking of Minor (Count 25)), and

24

"cooperate with the Commonwealth in the investigation and prosecution of other perpetrators of Human Trafficking, or any crimes consisting of sex offenses, pornography, or other offense related thereto . . . ." The trial court orally noted Nolan's requirement to register as a sex offender in its plea colloquy with Nolan. The Judgment and Sentence on Plea of Guilty included, as conditions of the sentence imposed, the usual requirements that accompany sex crimes, i.e., completion of sex offender treatment, submitting a blood sample for DNA identification, HIV testing, sex offender registration notification, residency restrictions, and a five-year additional conditional discharge period post-incarceration.

The Commonwealth also points out that Nolan acknowledged in his written motion to withdraw his plea that he was aware he would have to register as a sex offender but complained about having to admit to the facts of one of the counts before he could complete the Sex Offender Treatment Program. When rejecting the plea withdrawal motion, the trial court found Nolan was aware of the program before entering the plea, that it was part of the plea negotiations, and that the Commonwealth had agreed to expedite transfer to the correctional institution so he could get started in the program promptly.

We agree with the trial court that it is impossible to conclude anything other than that Nolan knowingly pled guilty to and was found guilty of crimes involving commercial sexual activity and that the court sentenced him for those commercial sexual activity crimes. A clerical error occurred when the language "commercial sexual activity" was omitted from the order when referencing the

25

human trafficking offenses but the trial court properly corrected that clerical error by amending the judgment. We reject Nolan's argument to the contrary.

## **CONCLUSION**

For the foregoing reasons, the Campbell Circuit Court's Amended Judgment and Sentence on Plea of Guilty is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Jeffrey Aaron Lawson

COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

James Coleman Shackelford
Assistant Attorney General

26