Bonnie STOGNER, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 1999–CA–001064–MR.

Court of Appeals of Kentucky.

Aug. 18, 2000.

Discretionary Review Denied
Feb. 14, 2001.

Irvin J. Halbleib, Louisville, KY, for Appellant.

A.B. Chandler III, Attorney General, Michael L. Harned, Assistant Attorney General, Frankfort, KY, for Appellee.

BEFORE: HUDDLESTON, JOHNSON and KNOPF, Judges.

*OPINION*

JOHNSON, Judge.

Bonnie Stogner appeals from a judgment of conviction of the Muhlenberg Circuit Court that followed her conditional plea of guilty[1] to criminal facilitation to the manufacture of methamphetamine[2] and to the status offense of being a persistent felony offender in the second degree[3] (PFO II). Stogner preserved for appeal the issue of whether the circuit court erred in denying her motion to suppress evidence following a search and seizure by the police. Having concluded that the trial court properly denied the motion to suppress, we affirm.

On the morning of December 8, 1998, at approximately 3:20 a.m., the Central City Police Department received a report concerning a shoplifting occurrence at the local Wal–Mart store. Officers Gayle Stewart, Wade Griggs, and Mike Garrett responded to the call. The night manager of the store told the officers that store employees had observed two people steal a Christmas tree and a plastic Santa Claus figure with a combined value of less than $300.[4] He said the pair left the Wal–Mart premises in an older model light blue Ford Thunderbird traveling in an easterly direction toward Central City. Officer Stewart was familiar with Stogner and knew that she owned a blue Thunderbird and that she fit the physical description given by the store manager. The officers decided to go to Stogner's residence to investigate the theft.

Officer Stewart arrived at Stogner's residence at approximately 3:30 a.m. and observed that Officers Griggs and Garrett were already there. Officer Stewart saw Stogner and a white male, later identified as Ricky Senay, exiting a light blue older model Thunderbird that was parked in the driveway near the rear of the house. As the officers approached the pair, they noticed a Christmas tree lying near the back door of the house. The police asked the suspects where they got the tree and they replied that they "took it" from Wal–Mart. The police placed Stogner and Senay under arrest for shoplifting and read them their *Miranda* rights.

---

1. Kentucky Rules of Criminal Procedure (RCr) 8.09.

2. KRS 506.080 and KRS 218A.1412.

3. KRS 532.080(2).

4. The suspects were described as being a white, blond-headed female in her late 20's or early 30's and a white male.

As the police were speaking with Stogner, they detected a strong smell of ether coming from the house. They also noticed on the back porch several cans of starting fluid and several antihistamine boxes. Based on their experience, the officers knew that these items could be used in the manufacture of the illegal controlled substance, methamphetamine.

The officers then asked Stogner if they could conduct a search of the residence. She said she would have to ask her husband and went inside. Upon returning a few minutes later, Stogner informed the police officers that they could not search the house.

After the police left the scene, Officer Stewart contacted the county attorney, who informed him that Stogner's husband, Michael Stogner, was wanted on an outstanding arrest warrant for bail jumping. When the police returned to Stogner's residence to arrest Michael Stogner, Clay Keeling came to the door. Keeling identified himself as the grandfather of Stogner's children from a previous marriage. He gave the police permission to enter the residence to search for Michael Stogner.

While the police unsuccessfully attempted to locate Michael Stogner, they discovered several other items commonly used to manufacture methamphetamine and smelled smoke coming from the garage. While Officer Griggs remained at the residence, Officers Stewart and Garrett left the premises in order to prepare an affidavit in support of a warrant to search the house. As he was preparing the affidavit, Officer Stewart received information from Officer Griggs that the dawn sunlight had allowed him to see in plain view in the back yard several other items regularly used in the manufacture of methamphetamine. After obtaining a search warrant, the police seized 97 items during a search of the house and the yard.

On January 20, 1999, the Muhlenberg County grand jury indicted Stogner on one felony count of manufacturing methamphetamine [5] and one count of being a persistent felony offender in the first degree (PFO I) [6]. Stogner filed a motion to suppress the evidence that had been seized during the execution of the search warrant on the grounds that the evidence had been discovered as a result of an illegal warrantless arrest. Following a hearing on March 9, 1999, where the trial court heard testimony from Officers Stewart and Griggs, the trial court denied the motion to suppress. The trial court ruled that the initial arrest of Stogner on the misdemeanor shoplifting charge was legal and that the search warrant was properly issued based upon information legally obtained by the police.

Following the trial court's ruling on the motion to suppress, Stogner entered a conditional guilty plea to the amended charges of criminal facilitation to the manufacture of methamphetamine and PFO II. The Commonwealth recommended a sentence of five years for the criminal facilitation to the manufacture of methamphetamine conviction that would be enhanced to seven years for the PFO II conviction. On April 27, 1999, the trial court, consistent with the Commonwealth's recommendation, entered a judgment sentencing Stogner to prison for seven years on the two convictions. This appeal followed.

█ Stogner presents a two-part argument in support of her claim that the trial court erred in denying her motion to suppress. First, she contends that her warrantless arrest for the misdemeanor theft offense [7] was illegal because the theft

---

5. KRS 218A.1412.

6. KRS 532.080(3).

7. The theft offense for which Stogner was initially arrested was a misdemeanor because the total value of both the Christmas tree and

was not committed in the officer's presence.[8] She argues that since the arrest was illegal, the subsequent search and seizure of evidence by the police was unconstitutional in violation of the Fourth Amendment of the United States Constitution and Section 10 of the Kentucky Constitution. Stogner further asserts that since the impetus for the suppression of the evidence was her illegal arrest, it is of no consequence that the suspicious items were discovered in plain view or that the police officers had probable cause to support a search warrant. She claims that once the search and seizure was tainted by the illegal arrest, the obtaining of a search warrant did not cure the illegal status of the search and seizure.

There are several flaws in Stogner's argument. First, her reliance on KRS 431.005 is misplaced. KRS 433.236 specifically addresses the detention and arrest of persons suspected of shoplifting:

(1) A peace officer, security agent of a mercantile establishment, merchant or merchant's employee who has probable cause for believing that goods held for sale by the merchant have been unlawfully taken by a person may take the person into custody and detain him in a reasonable manner for a reasonable length of time, on the premises of the mercantile establishment or off the premises of the mercantile establishment, if the persons enumerated in this section are in fresh pursuit, for any or all of the following purposes:

 (a) To request identification;

 (b) To verify such identification;

 (c) To make reasonable inquiry as to whether such person has in his possession unpurchased merchandise, and to make reasonable investigation of the ownership of such merchandise;

 (d) To recover or attempt to recover goods taken from the mercantile establishment by such person, or by others accompanying him;

 (e) To inform a peace officer or law enforcement agency of the detention of the person and to surrender the person to the custody of a peace officer, and in the case of a minor, to inform the ·parents, guardian, or other person having custody of that minor of his detention, in addition to surrendering the minor to the custody of a peace officer.

(2) The recovery of goods taken from the mercantile establishment by the person detained or by others shall not limit the right of persons named in subsection (1) of this section to detain such person for peace officers or otherwise accomplish the purposes of subsection (1).

(3) Any peace officer may arrest without warrant any person he has probable cause for believing has committed larceny in retail or wholesale establishments.

A fundamental rule of statutory interpretation is that a court must determine legislative intent based on the clear language of the statute. "As with any case involving statutory interpretation, our duty is to ascertain and give effect to the intent of the General Assembly. We are not at liberty to add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the lan-

---

plastic Santa Claus figure was less than $300. *See* KRS 514.030.

**8.** *See* KRS 431.005(1)(d), which provides in relevant part:
 (1) A peace officer may make an arrest:

. . .
 (d) Without a warrant when a misdemeanor, as defined in KRS 431.060, has been committed in his presence[.]

guage used [in the statute]."[9] A court "may not interpret a statute at variance with its stated language."[10] "To determine legislative intent, a court must refer to 'the words used in enacting the statute rather than surmising what may have been intended but was not expressed.'"[11] Each statutory chapter is self-contained and complete, reflecting its own distinct legislative purpose.[12] "[W]here two statutes concern the same or similar subject matter, the specific shall prevail over the general."[13] The Legislature is presumed to be aware of the existing law at the time of enactment of a later statute.[14] "Generally, when a later-enacted and more specific statute conflicts with an earlier-enacted and more general statute, the subsequent and specific statute will control."[15]

KRS 433.236(3) is specific in providing that a police officer may make an arrest without a warrant based on probable cause that the suspect "committed larceny in retail or wholesale establishments." KRS 431.005 is a more general statute dealing with all misdemeanor offenses. Further, subsection 3 was added to KRS 433.236 in 1968, while the provision limiting the arrest power of the police for misdemeanors to offenses committed in their presence first appeared in KRS 431.005 in 1962. Thus, KRS 433.236(3) takes precedence over KRS 431.005(1)(d) in situations such as the current case involving theft from a retail establishment both because it is more specific and because it was enacted later in time.

Stogner contends that KRS 433.236(3) does not apply herein because it merely creates a very limited exception to the general limitation on the misdemeanor arrest power contained in KRS 431.005. She argues that the scope of subsection 3 of KRS 433.236 is defined by the other subsections of that statute. Although she concedes that there is a conflict between KRS 433.236(3) and KRS 451.005, she advocates construing the former as authorizing warrantless arrest by police for misdemeanors not committed in their presence only when the suspect has been temporarily detained by the merchant. This interpretation, however, is inconsistent with the clear and unambiguous language of the statute. There is no reference in subsection 3 to the other provisions of KRS 433.236 that deal with the detention of the suspect.[16] Subsection 3 is separate and stands alone in addressing the police's authority to arrest for theft from retail or wholesale establishments. Since we must assume that the Legislature was aware of the existence of the general limitations in KRS 431.005(1)(d), we cannot conclude that it

**9.** *Beckham v. Board of Education of Jefferson Co.*, Ky., 873 S.W.2d 575, 577 (1994)(citing *Gateway Construction Co. v. Wallbaum*, Ky., 356 S.W.2d 247 (1962)). *See also Commonwealth v. Frodge*, Ky., 962 S.W.2d 864, 866 (1998).

**10.** *Layne v. Newberg*, Ky., 841 S.W.2d 181, 183 (1992)(citing *Gateway Construction Co., supra*).

**11.** *Commonwealth v. Allen*, Ky., 980 S.W.2d 278, 280 (1998)(quoting *Flying J. Travel Plaza v. Commonwealth*, Ky., 928 S.W.2d 344, 347 (1996)). *See also Estes v. Commonwealth*, Ky., 952 S.W.2d 701, 703 (1997)(quoting *Musselman v. Commonwealth*, Ky., 705 S.W.2d 476, 478 (1986)).

**12.** *Beatus v. Commonwealth*, Ky.App., 965 S.W.2d 167, 169 (1998).

**13.** *Withers v. University of Kentucky*, Ky., 939 S.W.2d 340, 345 (1997)(citing *Kampschaefer v. Commonwealth*, Ky.App., 746 S.W.2d 567 (1988); *Land v. Newsome*, Ky., 614 S.W.2d 948 (1981)). *See also Porter v. Commonwealth*, Ky., 841 S.W.2d 166, 168 (1992).

**14.** *Haven Point Enterprises, Inc. v. United Kentucky Bank, Inc.*, Ky., 690 S.W.2d 393, 395 (1985); *Fairbanks v. Large*, Ky.App., 957 S.W.2d 307, 310 (1997).

**15.** *Commonwealth v. Brasher*, Ky.App., 842 S.W.2d 535, 536 (1992).

**16.** *See e.g.*, subsection 2 of KRS 433.236 which refers to subsection 1.

intended to limit warrantless police arrests for shoplifting solely to situations involving detention by the merchant. Accordingly, we reject Stogner's argument that the search and seizure of the drug evidence was unconstitutional because it was tainted by an illegal arrest.

 Moreover, even if Stogner had been illegally arrested, the police officers still had sufficient grounds to support the search. It is conceded that the police were legally on Stogner's premises for the purpose of investigating the reported shoplifting. Under *Terry v. Ohio*,[17] the police had sufficient reasonable suspicion to make an investigatory stop of Stogner and Senay. Under the "plain view" exception to the requirement for a warrant, "[w]hen an officer is where he has a right to be, he may seize contraband which comes into 'plain view.'"[18] The officers observed the incriminating evidence in plain view on the back porch of the residence. They saw additional incriminating items inside the residence when they were lawfully attempting to execute an arrest warrant on Michael Stogner and were given permission to enter the house. The police then obtained a search warrant for the residence. Thus, the evidence was discovered because it was in plain view and not as a product of the arrest of Stogner. Accordingly, even without a warrant, the police could have immediately seized the incriminating evidence they saw in plain view on the back porch or while searching for Michael Stogner.

Stogner's reliance on *Mash v. Commonwealth*,[19] is misplaced. In *Mash*, the evidence was seized pursuant to a search incident to an illegal arrest. In the case *sub judice*, the police had a right to be where they were and the incriminating evidence was discovered in plain view, not as a product or part of the arrest. Thus, even if Stogner's arrest had been illegal, the seizure of the evidence would have still been proper.

In conclusion, we hold that Stogner's arrest for theft was supported by probable cause and authorized under KRS 433.236(3). Furthermore, even if the arrest had been illegal, the seizure of the evidence was not unconstitutional because it was not a product of the arrest, but was otherwise based on items seen in plain view.

Since the trial court was correct to deny Stogner's motion to suppress, we affirm the judgment of the Muhlenberg Circuit Court.

ALL CONCUR.

---

**17.** 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See also Simpson v. Commonwealth,* Ky.App., 834 S.W.2d 686 (1992).

**18.** *Gillum v. Commonwealth,* Ky.App., 925 S.W.2d 189, 191 (1996). *See also Hazel v. Commonwealth,* Ky., 833 S.W.2d 831 (1992).

