Carl Steven CALLOWAY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2005–CA–000589–MR.

Court of Appeals of Kentucky.

March 17, 2006.

Julia K. Pearson, Assistant Public Advocate, Frankfort, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Kristin N. Logan, Assistant Attorney General, Frankfort, KY, for appellee.

Before TACKETT, TAYLOR, and VANMETER, Judges.

## OPINION

TACKETT, Judge.

Carl Calloway appeals from a judgment of the Daviess Circuit Court finding him guilty of first-degree sexual abuse and sentencing him to serve one year. He argues that the trial court improperly allowed rebuttal testimony on a collateral matter and that the Commonwealth failed to prove all of the elements of the offense beyond a reasonable doubt. We disagree and affirm the trial court.

The charge against Calloway stemmed from an incident involving his eleven year-old niece, D.R., who was staying with Calloway and his wife, Vicky. The Calloways took D.R. to the movies, after which she spent the night at their house. The next day, Calloway asked D.R. to sit on his lap in the recliner. He rubbed her leg, put his hand up her shorts, and touched her vaginal area underneath her underpants. Calloway asked D.R. whether she liked what he was doing, and she told him no, so he stopped. Shortly afterwards, the Calloways drove D.R. to her mother's house so she could attend a birthday party.

The next day, D.R. wrote a note to her mother telling her about the way her uncle had touched her and saying that she did not want to ever go to their house again. She left the note on a table for her mother to find. After finding the note, D.R.'s mother contacted the police and D.R. was interviewed by Detective Mark Saffron. Calloway was interviewed and denied touching D.R. inappropriately. He stated that he was tickling her as he often did, and that she jumped around quite a bit, so some accidental contact may have occurred.

Saffron sought and obtained an indictment charging Calloway with first-degree sexual abuse. At that time, Saffron and D.R.'s father both thought that she had been touched on the outside of her clothes because she stated she was dressed at the time. While talking the incident over with D.R., her father realized that skin to skin contact had actually occurred, and he notified Saffron. D.R.'s parents then took her to be interviewed a second time for clarification. Calloway opted to go to trial and was found guilty and sentenced to serve one year. This appeal followed.

Calloway contends that the Commonwealth was allowed to present improp-

er rebuttal evidence on a collateral matter. D.R.'s grandmother, Betty Jean Cooper, was asked during her testimony whether she had talked to D.R. about the abuse. Cooper answered that she had not. Further questioning elicited information that Cooper's son told her not to talk to her granddaughter about the incident because D.R. did not want to discuss it with anyone. Calloway objected, arguing that Cooper's testimony amounted to rebuttal evidence on a collateral issue. We disagree.

D.R. and her father both testified that she had not spoken to her grandmother about the sexual abuse. During his testimony, D.R.'s father was questioned about a transcript of a taped interview he gave Saffron in which he stated that D.R. discussed the incident with no one except his mother. D.R.'s father testified that he did not remember making that statement. (In fact, after Cooper's testimony, it was discovered that the transcript of the recorded interview was incorrect. On the tape, D.R.'s father stated that his mother had not discussed the abuse with D.R.) Moreover, Calloway's wife testified that she was told Cooper discussed the incident with D.R. As part of his defense strategy, Calloway contended that D.R. made up the incident and that she continued to lie about what happened once the police were involved because she was afraid of getting in trouble. Further, Calloway argued to the jury that D.R. changed her story about how she had been touched between interviews as a result of repeated questioning by her parents and grandmother. Thus, the issue of whether D.R. and her father testified truthfully that she did not talk to her grandmother about the abuse was a material issue, and rebuttal evidence was allowed. *Stopher v. Commonwealth,* 57 S.W.3d 787 (Ky.2001).

Calloway next argues that the trial court should have granted his motion for a directed verdict. He contends that the Commonwealth failed to prove all elements of the charge beyond a reasonable doubt. Kentucky Revised Statutes (KRS) 510.110(1) defines first-degree sexual abuse as follows:

(1) A person is guilty of sexual abuse in the first degree when:

(a) He subjects another person to sexual contact by forcible compulsion; or

(b) He subjects another person to sexual contact who is incapable of consent because he:

1. Is physically helpless;

2. Is less than twelve (12) years old; or

3. Is mentally incapacitated.

"Sexual contact" is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desire of either party." KRS 510.010(7). Calloway argues that the Commonwealth failed to prove that, if he touched D.R.'s vaginal area, it was done for the purpose of sexual gratification for either of them.

When ruling on a motion for a directed verdict of acquittal, the trial court is required to consider all evidence presented in the light most favorable to the Commonwealth. *Commonwealth v. Benham,* 816 S.W.2d 186 (Ky.1991). On the appeal, the standard of review is whether or not it was clearly unreasonable for the fact finder to find guilt. *Commonwealth v. Sawhill,* 660 S.W.2d 3 (Ky.1983). Calloway told police that D.R. was extremely ticklish and that he often tickled her while she was sitting on his lap. He denied deliberately touching her vaginal area and stated that, if any touching occurred, it was accidental and resulted from the squirming of a ticklish youngster. This was also his story at trial. Based on this evidence, Calloway argues that he was entitled to a directed verdict of

acquittal; however, this ignores other evidence which was placed before the jury.

D.R. told police that Calloway asked her to sit on his lap. That he rubbed her leg, sliding his hand higher as she sat there. She stated that he placed his hands underneath her shorts and underwear and touched her vaginal area. D.R. testified that Calloway had tickled her innocently before, but this was not tickling. She said that he asked her if she liked being touched that way and she told him no. Calloway then told D.R. that when she got older they could do lots of fun things together, and asked her what she wanted to do. She said she'd like to go fishing. At that point, Calloway told D.R. not to tell anyone about him touching her because he could go to jail or be killed. Later, D.R. wrote a note to her mother stating that Calloway had touched her in a bad way and that she never wanted to go to his house again. The note also asked her mother not to tell their friends and family about the incident. D.R. said that she had written the note because her mother had told her about good touches and bad touches, and this was a bad touch. None of this evidence points to an accidental touching, such as what Calloway claims may have occurred. Clearly, it was not unreasonable for the jury to find that Calloway touched his eleven year-old niece's vaginal area for the purpose of sexual gratification.

For the foregoing reasons, the judgment of the Daviess Circuit Court is affirmed.

ALL CONCUR.