RENDERED:  OCTOBER 23, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-1272-MR
AND
NO. 2018-CA-1340-MR

COMMONWEALTH OF KENTUCKY       APPELLANT/CROSS-APPELLEE

APPEAL AND CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE A. C. MCKAY CHAUVIN, JUDGE
ACTION NO. 14-CR-000797

BRENT MICHAEL WATSON          APPELLEE/CROSS-APPELLANT

OPINION
AFFIRMING IN PART AND REVERSING IN PART

** ** ** ** **

BEFORE:  ACREE, JONES, AND K. THOMPSON, JUDGES.

JONES, JUDGE:  Brent Michael Watson was convicted of one count of first-

degree sexual abuse after a jury trial before the Jefferson Circuit Court.  Watson

entered into a plea agreement for a five-year sentence, which preserved his right to

appeal.  In his judgment of conviction and sentence, the trial court found that credit

for his pretrial incarceration entitled Watson to immediate release. The Commonwealth appealed on the basis that the trial court had no authority to determine that Watson's custody credit was sufficient to discharge his five-year sentence. Watson cross-appealed as a matter of right claiming that the trial court erred by denying his motion to strike a juror for cause, denying his motion for a directed verdict, and refusing to instruct the jury on harassment with physical contact as a lesser-included offense.

Having reviewed the record in conjunction with all applicable legal authority, we find no error with respect to the issues raised in Watson's cross-appeal, and we affirm with respect to those issues. Under these circumstances, however, we must conclude that the trial court exceeded its authority in ordering Watson's immediate release and, therefore, reverse with respect to that issue.

## I. BACKGROUND

Watson was arrested on March 20, 2014, after the victim's mother reported that Watson had touched the victim's vagina and Watson confessed to police. On March 27, 2014, Watson was indicted for having committed the offense of sexual abuse in the first-degree by subjecting the victim, a person less than twelve years of age, to sexual contact, a Class C felony. Kentucky Revised Statutes (KRS) 510.110. At the time of the incident the victim ("Victim"), Watson's cousin, was nine years old; Watson was nineteen.

Watson remained in custody, first in jail and then on home incarceration pursuant to the Louisville Metro Department of Corrections' Home Incarceration Program (HIP). *See* KRS 431.517(1). He was eligible to earn credit towards his maximum expiration date if convicted for the time he spent on HIP pursuant to KRS 532.120 and KRS 532.245(1). Watson maintained employment while on home incarceration and otherwise complied with all of the program's requirements.

On June 25, 2015, Watson accepted an offer to plead guilty as charged with a recommended sentence of five years of incarceration and submitted a motion to enter a guilty plea. This was the minimum incarceration available for a defendant who had committed a Class C felony. KRS 532.060(2)(c). By pleading guilty to a felony sexual offense under Chapter 510, Watson would be classified as a violent offender pursuant to KRS 439.3401(1)(f) and be ineligible for probation pursuant to KRS 532.047.

Initially, the trial court entered a judgment on Watson's guilty plea and set the matter for sentencing, ordering a presentence investigation (PSI). A comprehensive sexual offender presentence evaluation revealed that Watson scored similarly to individuals in the low risk range for reoffending and was amenable to treatment. The sentencing was repeatedly continued, but ultimately the trial court declined to accept the guilty plea based on its opinion that five years

was too much time for the offense. The Commonwealth was unwilling to amend the charge and no other plea deal was offered. The Commonwealth sought appointment of a special judge, claiming the trial judge was biased, but the Kentucky Supreme Court denied the request. Ultimately the matter proceeded to a jury trial on April 23, 2018.

During jury selection, Watson asked for Juror 2128828 to be stricken for cause based on bias. After the trial court denied this request, Watson used a peremptory challenge to remove this juror and ultimately used all of his peremptory challenges.

After the Commonwealth's case in chief and at the conclusion of the case, Watson requested a directed verdict on the basis that the Commonwealth failed to establish he touched Victim for the purpose of sexual gratification. The trial court denied Watson's motion.

Watson proposed jury instructions on sexual abuse in the first degree and harassment with physical contact as a lesser-included offense. However, the trial court instructed the jury on sexual abuse in the first degree and criminal attempt to commit sexual abuse in the first degree.

After deliberating, on April 25, 2018, the jury found Watson guilty of sexual abuse in the first degree. The following day, before the sentencing phase of the trial commenced, Watson entered into a plea agreement with the

Commonwealth for five years of incarceration, reserving his right to appeal any trial errors.

On May 10, 2018, Watson filed a motion for judgment notwithstanding the verdict or, in the alternative, a motion for a new trial, arguing that the trial court erroneously failed to strike Juror 2128828 and failed to provide a jury instruction on harassment with physical contact. The trial court denied Watson's motion. On July 26, 2018, Watson's judgment of conviction and sentence was entered. Based on the credits Watson accumulated during home incarceration, the trial court ordered him immediately discharged from custody.

## II. ANALYSIS

We first address Watson's arguments of trial error in his cross-appeal, beginning with the trial court's refusal to strike Juror 2128828 for cause. During jury selection, members of the panel were asked whether their reactions to the allegation of sexual abuse would make it difficult to be impartial. Juror 2128828 did not participate in this exchange but did respond when the panel was asked whether any of the jurors, their immediate families, or their close friends had ever been charged with a criminal offense, convicted, or arrested. Juror 2128828 stated that her husband raped her and committed domestic violence against her. She stated the system treated her fairly and the system also treated her husband fairly, although her husband could have gotten more time. She then laughed. When

asked whether this experience would affect her ability to be fair, Juror 2128828 replied, "oh no, not at all." No further questions were asked of this juror.

Watson moved to strike Juror 2128828 for cause on the basis that a reasonable ground existed to believe that she could not be fair or impartial due to her involvement in the rape and domestic violence allegations against her husband. The trial court denied the motion, finding Juror 2128828's response did not indicate that she could not be impartial. Ultimately, Watson used one of his nine peremptory strikes to remove Juror 2128828 from the panel.

Watson used all of his peremptory strikes and argues that if the trial court had granted his motion to strike Juror 2128828, he would have stricken Juror 2128694, who ultimately served on the jury that convicted Watson. Watson properly preserved this issue by using a preemptory challenge to strike this juror and using all of his preemptory challenges. *Morrison v. Commonwealth*, 528 S.W.3d 896, 899 (Ky. 2017).

A defendant's right to an impartial jury is protected by the Sixth and Fourteenth Amendments to the United States Constitution and Section 11 of the Kentucky Constitution. *Ordway v. Commonwealth*, 391 S.W.3d 762, 780 (Ky. 2013). "When there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified." Kentucky Rules of Criminal Procedure (RCr) 9.36(1). "[T]rial

courts [are] to strike jurors any time reasonable questions about their impartiality persist and cannot be resolved conclusively." *Wallace v. Commonwealth*, 478 S.W.3d 291, 298 (Ky. 2015).

"We have long recognized that a determination as to whether to exclude a juror for cause lies within the sound discretion of the trial court, and unless the action of the trial court is an abuse of discretion or is clearly erroneous, an appellate court will not reverse the trial court's determination." *Ordway*, 391 S.W.3d at 781 (quoting *Fugett v. Commonwealth*, 250 S.W.3d 604, 613 (Ky. 2008) (internal quotation marks omitted)). "[T]he trial court possesses considerable discretion [in determining whether to strike a juror for cause] and its view of the juror's demeanor and apparent candor must be duly considered." *Moss v. Commonwealth*, 949 S.W.2d 579, 581 (Ky. 1997). "The court must weigh the probability of bias or prejudice based on the entirety of the juror's responses and demeanor." *Shane v. Commonwealth*, 243 S.W.3d 336, 338 (Ky. 2007).

"[T]he mere fact that a prospective juror has been the victim of a crime similar to the crime being tried does not by itself imply a disqualifying bias. Additional evidence of bias is required." *Brown v. Commonwealth*, 313 S.W.3d 577, 598 (Ky. 2010).

> Obvious factors bearing on the likelihood of bias are the similarity between the crimes, the length of time since the prospective juror's experience, and the degree of trauma the prospective juror suffered. It is the totality of

all the circumstances, however, and the prospective
juror's responses that must inform the trial court's ruling.

*Id.* "[A] categorical disqualification [due to a juror's life experience] reflects a

paternalistic approach to the issue that, while understandable, is simply wrong."

*Little v. Commonwealth*, 422 S.W.3d 238, 244 (Ky. 2013).

> While judges should never abdicate their responsibility to
> strike a juror when circumstances clearly require it,
> judges must make an individualized decision with respect
> to the qualifications of a specific juror, giving due
> deference to a credible juror's own assessment of how
> her life's experiences, however tragic they may be,
> would influence her ability to serve fairly and
> impartially.

*Id.*

While Watson believes Juror 2128828's failure to speak up earlier and

her laugh indicated that she was trying to hide her difficulties in dealing with this

kind of a case, the trial court believed her actions did not indicate bias.  Having

reviewed the video recording, there was nothing about Juror 2128828's tone to

indicate she was upset when discussing the issue, and she unequivocally indicated

without any hesitation that she could be impartial.  Additionally, Watson did not

ask additional questions to explore whether this juror was biased.

Ultimately, the trial court acted within its discretion in determining

that Juror 2128828's assurances that she could be fair and impartial were not

negated by her behavior.  Such a determination was particularly within the trial

-8-

court's sound discretion and not clearly erroneous. Therefore, the trial court did not err in refusing to allow this juror to be stricken for cause.

Next, Watson argues his motion for a directed verdict should have been granted because the Commonwealth failed to prove he touched Victim for purposes of sexual gratification.

In *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991), the Kentucky Supreme Court restated the rule for a directed verdict as follows:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

"To defeat a directed verdict motion, the Commonwealth must only produce 'more than a mere scintilla of evidence.'" *Lackey v. Commonwealth*, 468 S.W.3d 348, 352 (Ky. 2015) (quoting *Benham*, 816 S.W.2d at 187). "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Benham*, 816 S.W.2d at 187.

Pursuant to KRS 510.110(1)(b)2.: "A person is guilty of sexual abuse in the first degree when: . . . [h]e or she subjects another person to sexual contact

who is incapable of consent because he or she: . . . [i]s less than twelve (12) years old[.]" KRS 510.010(7) provides: "'Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desire of either party[.]"

The "[i]ntent [to gratify sexual desire of either party] can be inferred from the actions of an accused and the surrounding circumstances. The jury has wide latitude in inferring intent from the evidence." *Anastasi v. Commonwealth*, 754 S.W.2d 860, 862 (Ky. 1988). An inference that the touching was performed deliberately for the purpose of sexual gratification can be inferred by the circumstances.

In *Tungate v. Commonwealth*, 901 S.W.2d 41, 42 (Ky. 1995), "the alleged sexual abuse involved the little girls sitting in the appellant's lap while he was sitting in a large chair, and consisted of [him] putting his hand under the clothing of the children and touching their vaginal areas." The Court concluded:

> Based on the evidence taken as a whole, accepted as true and viewed in a light most favorable to the Commonwealth, it was certainly not clearly unreasonable for the jury to find beyond a reasonable doubt that the Commonwealth met its burden of proving each element of each offense, including that the touching was done for the purpose of sexual gratification.

*Id.*; *see also Calloway v. Commonwealth*, 187 S.W.3d 861, 864 (Ky. App. 2006) (upholding the denial of a directed verdict where victim testified that perpetrator

-10-

asked her to sit on his lap, "placed his hands underneath her shorts and underwear and touched her vaginal area[,]" victim denied perpetrator was trying to tickle her, and victim reported perpetrator asked her if she liked it and directed her not to tell); *Boone v. Commonwealth*, 155 S.W.3d 727, 730 (Ky. App. 2004) (holding sufficient evidence to prove contact was for sexual gratification where victim testified perpetrator fondled his genitals and officer testified that perpetrator admitted the contact was intentional).

Victim, her younger sister, her mother, a police officer, and Watson testified. Victim recounted falling asleep on a couch while being hugged by Watson and waking up next to Watson, with his hand inside her pants and underwear, touching her vagina. She did not know how long he was touching her before she woke up, but it was only a few seconds after she woke up when he stopped. She did not know if he was sexually aroused. Victim's sister testified that she saw Watson with his hand down her sister's pants while Victim and Watson were on the couch. Victim's mother testified that she became suspicious after reading Victim's journal. She confronted Watson and he ultimately confessed to her that he had touched Victim inappropriately and repeatedly apologized.

The police officer testified that Watson confessed to the crime and his confession was played to the jury. On the recording, Watson admitted he reached

into Victim's pants and underwear while she was asleep and touched her vagina with his finger, rubbing it. He claimed he only touched Victim for "maybe two to three seconds" or up to five seconds. When Watson was asked whether he was "aroused, turned on," at first he did not answer the question. He was then asked: "So were you?" He answered: "No. I mean at the moment I guess I was but . . ." and then denied having an erection. Watson told the officer he apologized to Victim. Watson disclosed he had been sexually molested as a child by his older cousins.

Watson testified at trial that he touched Victim for only seconds and did not know why he touched her. He denied having an erection, trying to kiss her, or touching other parts of Victim's body. However, he did admit that at the time he guessed he was aroused even though he did not have an erection. There was no evidence that Watson's actions, though brief, were anything other than intentional, and he did not provide any alternative motivation for his actions. Therefore, the jury could properly infer that Watson's touching of Victim's vagina was done for the purpose of sexual gratification, however brief the gratification may have been at the time. Therefore, we conclude that the trial court properly denied Watson's motion for a directed verdict.

Watson next argues that the trial court erred by failing to instruct the jury on harassment as a lesser-included offense to sexual abuse. The proposed

-12-

harassment instruction that Watson submitted provided that Watson subjected Victim to physical contact and "[t]hat in doing so, he intended to harass, annoy or alarm [Victim]."

"We review a trial court's ruling on jury instructions for abuse of discretion." *Sasser v. Commonwealth*, 485 S.W.3d 290, 296-97 (Ky. 2016). "It is well settled that the trial court should instruct the jury on every theory of the case supported by the evidence, including lesser offenses." *Swain v. Commonwealth*, 887 S.W.2d 346, 348 (Ky. 1994). Pursuant to KRS 505.020(2)(a) a lesser-included offense is "established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]" Therefore, "if the lesser offense requires proof of a fact not required to prove the greater offense, then the lesser offense is not included in the greater offense, but is simply a separate, uncharged offense." *Colwell v. Commonwealth*, 37 S.W.3d 721, 726 (Ky. 2000).

As discussed above: "A person is guilty of sexual abuse in the first degree when: . . . [h]e or she subjects another person to sexual contact [touching of the sexual or other intimate parts for the purpose of sexual gratification] who is incapable of consent[.]" KRS 510.110(1)(b)2. In contrast, "[a] person is guilty of harassment when, with intent to intimidate, harass, annoy, or alarm another person,

he or she: . . . [s]trikes, shoves, kicks, or otherwise subjects him to physical contact[.]"  KRS 525.070(1)(a).

Harassment with physical contact is not a lesser-included offense of sexual abuse in the first degree because each offense requires proof of a fact that the other offense does not—a different kind of intent.  Harassment with physical contact requires an intent to intimidate, harass, annoy, or alarm while sexual abuse in the first degree requires an intent to gratify the sexual desire of either party.  These intents are inconsistent with one another.

Additionally, as explained in *Boone v. Commonwealth*, No. 2011-CA-001359-MR, 2013 WL 5663089, at *7-8 (Ky. App. Oct. 18, 2013) (unpublished) and *Bailey v. Commonwealth*, No. 2008-CA-001108-MR, 2009 WL 2633507, at *2-3 (Ky. App. Aug. 28, 2009) (unpublished),[1] the jury need not be instructed on harassment with physical contact as a lesser-included offense of sexual abuse where this defense lacks an evidentiary foundation.  Watson testified he did not know why he touched Victim's vagina, and there was no other evidence to conclude that his purpose in doing so was not for sexual gratification but to annoy her.

---

[1] Pursuant to Kentucky Rules of Civil Procedure (CR) 76.28(4)(c), we cite to these unpublished decisions because there is no published opinion that adequately addresses this issue.

-14-

We now turn to the Commonwealth's argument that the trial court erred in ordering Watson immediately released.

On July 18, 2018, Watson's sentencing hearing was held. The trial court stated that Watson was being sentenced to five years of incarceration pursuant to the plea agreement and the mandatory minimum sentence for his crime. Because of delays in Watson being tried, he earned a substantial amount of credit while on HIP pursuant to KRS 532.245(1), which was required to be credited as time served in prison by the Department of Corrections. KRS 532.120(3), (7).

The trial court confirmed that the PSI report stated Watson served 1,539 days as of June 5, 2018. The trial court added credit accrued after the PSI report and found Watson served a total of 1,582 days. The trial court acknowledged that Watson had not served five years prior to sentencing, which would be 1,825 days. However, after performing some calculations, the trial court opined that 1,582 days was essentially five years of credit and more than 85% of Watson's sentence, entitling Watson to immediate release.

During the hearing, after listening to arguments from counsel, the trial court announced it would exercise its discretion under KRS 532.120(8) to allow Watson to be immediately discharged, reasoning because Watson had served more than 85% of his sentence, it could deem Watson's entire sentence served.

In the judgment, the trial court stated in pertinent part: "In keeping with KRS 532.120(8), and insofar as the presentence report indicates that [Watson] has accumulated sufficient sentencing credits to allow of an immediate discharge from confinement upon pronouncement of sentence, the amount of credit (*i.e.* 1,582 days) is CONFIRMED and AWARDED[.]" Watson was also sentenced to a five-year period of conditional discharge following release, required to enroll in and complete a sex offender treatment program (SOTP), and register as a sex offender as required of all sexual offenders.

The Commonwealth argues the trial court had no authority to determine that Watson's credit of 1,582 days was sufficient to discharge his five-year sentence, resulting in his immediate release subject to the five-year period of conditional discharge mandated for sexual offenders. The Commonwealth argues the trial court abused its discretion because Watson needed to serve the balance of his sentence day-for-day until he either completed his sentence or he completed his SOTP, which would then make him eligible to apply other credit to reduce the remaining balance of his sentence.

The right to jail-time credit is derived purely from statute. As such, it is governed by and interpreted according to legislative intent. "As with any case involving statutory interpretation, our duty is to ascertain and give effect to the intent of the General Assembly." *Stogner v. Commonwealth*, 35 S.W.3d 831, 834

-16-

(Ky. App. 2000) (quoting *Beckham v. Board of Education of Jefferson Co.*, 873 S.W.2d 575, 577 (Ky. 1994) (citations omitted)).

Prior to June 8, 2011, KRS 532.120(3) provided that the presentencing time spent in custody "shall be credited by the court imposing sentence." Under this version of the statute, trial courts had the duty to ensure the credit was properly applied, requiring courts to address presentencing jail-time credit in their judgments. The current language of KRS 532.120(3), which became effective June 8, 2011, removed the trial court's authority to determine jail-time credit except in very rare circumstances. The current version of the statute provides that in felony cases the trial court only has the authority to determine jail-time credit where: "a presentence report indicates that a defendant has accumulated sufficient sentencing credits under this section to allow for an immediate discharge from confinement upon pronouncement of sentence, the court may confirm the amount of the credit and award the credit at pronouncement." KRS 532.120(8).

As noted, the trial court acknowledged that Watson had *not* served five years prior to sentencing, which would be 1,825 days. However, the trial court determined that the amount of time Watson had served as of the date of sentencing, 1,582 days, was essentially enough time to allow for immediate discharge based on KRS 439.3401(4) ("In no event shall a violent offender be

given credit on his or her sentence if the credit reduces the term of imprisonment to less than eighty-five percent (85%) of the sentence.").  The trial court reasoned that 85% of Watson's five-year sentence would amount to 1,551 days, which exceeded the number of days Watson had spent in pretrial detention.  According to the trial court, this made Watson eligible for immediate release at the time of sentencing.

Even though Watson had spent more than 85% of his sentence in pretrial detention, we cannot agree with the trial court's conclusion that Watson was entitled to immediate discharge.  Serving 85% of his sentence would have made Watson *eligible* for parole based on the amount of time served.  Eligibility for parole is not the same thing as entitlement to immediate discharge.  Because Watson's conviction made him a sexual offender, parole eligibility depends on more than time served.  KRS 197.045(4) provides:

> Until successful completion of the sex offender treatment program, an eligible sexual offender may earn sentencing credit.  However, the sentencing credit shall not be credited to the eligible sexual offender's sentence.  Upon the successful completion of the sex offender treatment program, as determined by the program director, the offender shall be eligible for all sentencing credit earned but not otherwise forfeited under administrative regulations promulgated by the Department of Corrections.  After successful completion of the sex offender treatment program, an eligible sexual offender may continue to earn sentencing credit in the manner provided by administrative regulations promulgated by the Department of Corrections.  Any eligible sexual offender, as defined in KRS 197.410, who has not successfully completed the sex offender treatment

program as determined by the program director shall not be entitled to the benefit of any credit on his or her sentence. **A sexual offender who does not complete the sex offender treatment program for any reason shall serve his or her entire sentence without benefit of sentencing credit, parole, or other form of early release.** The provisions of this section shall not apply to any sexual offender convicted before July 15, 1998, or to any sexual offender with an intellectual disability.

KRS 197.045(4) (emphasis added).

Based on the express language of KRS 197.045(4), Watson, who had not completed the sex offender treatment program, was only eligible for immediate release if he had been in custody a sufficient amount of time to equal service of his "entire sentence." Watson would have only been entitled to immediate release if he had served enough time in pretrial detention to satisfy his entire five-year sentence, which he had not done. Therefore, we must conclude that the trial court exceeded its authority when it determined that Watson was entitled to immediate release based on its own calculation of pretrial jail time credit and parole eligibility.

Of course, this does not mean that Watson would have not ever been entitled to jail-time credit. It means the Department of Corrections, not the trial court, has the authority to calculate the amount of credit and to determine the appropriate release date. The trial court abused its discretion by ordering Watson's

-19-

immediate release. Under these circumstances, the trial court had no authority to order immediate release. Accordingly, we must reverse on this ground.

ACREE, JUDGE, CONCURS.

THOMPSON, K., JUDGE, DISSENTS AND DOES NOT FILE A SEPARATE OPINION.


BRIEFS FOR APPELLANT/CROSS-APPELLEE:

Andy Beshear
Attorney General of Kentucky
Frankfort, Kentucky

Dorislee J. Gilbert
Special Assistant Attorney General
Louisville, Kentucky

BRIEFS FOR APPELLEE/CROSS-APPELLANT:

Christopher Barrett Thurman
Assistant Appellate Defender
Louisville Metro Public Defender
Louisville, Kentucky