**Donald Sid BOONE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2003–CA–000042–MR.

Court of Appeals of Kentucky.

Sept. 3, 2004.

Discretionary Review Denied March 9, 2005.

Richard Hoffman, Assistant Appellate Advocate Department of Public Advocacy, Frankfort, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Samuel J. Floyd, Jr., Assistant Attorney General, Frankfort, KY, for appellee.

Before JOHNSON, KNOPF, and SCHRODER, Judges.

## OPINION

KNOPF, Judge.

Donald Sid Boone appeals from a judgment of conviction confirming a jury verdict finding him guilty of first-degree sexual abuse. He argues that the trial court erred by failing to grant a mistrial after a police officer commented on his invocation of his right to remain silent. Boone also contends that the trial court erred by failing to grant his motions for a directed verdict and for probation of his sentence. Finding no error, we affirm.

On July 20, 2001, a Mason County Grand Jury returned an indictment charging Boone with one count of first-degree sexual abuse.[1] Subsequently, the grand

---

1. KRS 510.110.

jury returned another indictment charging Boone with three counts of second-degree sexual abuse,[2] two counts of second-degree sodomy,[3] and one count each of first-degree sodomy,[4] and criminal attempt to commit second-degree sodomy.[5] One of the second-degree sodomy charges was dismissed prior to trial. Following a trial, the jury acquitted Boone on the first-degree sodomy charge, but found him guilty of one count of first-degree sexual abuse. The jury was unable to reach a verdict on the remaining charges and the trial court granted a mistrial on those counts. The jury fixed Boone's sentence at five years' imprisonment, which the trial court imposed. Boone now appeals.

The charges in this case were brought after J.H., then twelve years old, accused Boone of having sexual contact with him and sodomizing him. Boone met J.H.'s family during the summer of 2000 when Boone was assigned to provide transportation to a Cincinnati hospital for J.H.'s sister. Boone developed a friendship with J.H., inviting J.H. to come to church with him. At first, Boone picked up J.H. on Sundays and took him to church and then to eat. Subsequently, they began spending more time together. Eventually, J.H. began to spend Saturday nights at Boone's house, where Boone lived with his parents. On several of these overnight visits, J.H. slept with Boone in Boone's bed.

Their relationship ended abruptly in early 2001, when J.H. reported that Boone had fondled his genitals and sodomized him on several occasions. Following this report, Detective Sherman Royce of the

Kentucky State Police interviewed Boone about J.H.'s accusations. Boone strongly denied the sodomy charges. However, according to Detective Royce, Boone admitted that he had touched J.H.'s penis once because he was "curious". Boone denies having said this, but admits that he once accidentally touched J.H.'s crotch, although J.H. was clothed at the time.

At trial, Detective Royce related his account of this interview. Detective Royce also mentioned that Boone declined to allow this interview to be tape-recorded. Boone's counsel immediately objected, arguing that Detective Royce's reference amounted to an improper comment on Boone's right to remain silent. The trial court agreed, sustaining the objection and admonishing the jury to disregard the statement about Boone declining to put his statement on tape. In this appeal however, Boone argues that the trial court should have granted a mistrial *sua sponte.*

■■■ We disagree. The trial court admonished the jury on that issue and defense counsel sought no further relief. The failure to move for a mistrial following an objection and admonition indicates satisfactory relief.[6] Stated otherwise, if Boone felt that the admonition was inadequate, it was incumbent on him to move the trial court for a further admonition or to move for a mistrial.[7] Consequently, this issue is not preserved for review.

■■■ Furthermore, we find no palpable error from the trial court's failure to grant a mistrial.[8] A jury is presumed to follow an admonition to disregard evidence, and the admonition thus cures any

---

**2.** KRS 510.120.

**3.** KRS 510.080.

**4.** KRS 510.070.

**5.** KRS 506.010.

**6.** *Derossett v. Commonwealth,* Ky., 867 S.W.2d 195, 197 (1993).

**7.** *Lewis v. Charolais Corp.,* Ky.App., 19 S.W.3d 671, 676 (1999).

**8.** *See* RCr 10.26.

error.[9] There are only two circumstances in which the presumptive efficacy of an admonition falters: (1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition and there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant; or (2) when the question was asked without a factual basis and was "inflammatory" or "highly prejudicial."[10] Neither exception applies here.

■■■ Boone primarily argues that the trial court erred by failing to grant a directed verdict on the charge of first-degree sexual abuse. As Boone correctly notes, the Commonwealth bears the burden of proving each element of the charged offense beyond a reasonable doubt.[11] On a motion for directed verdict, the trial court must draw all reasonable inferences from the evidence in favor of the Commonwealth.[12] Only if it would be clearly unreasonable for a jury to find guilt can an appellate court disturb a jury's guilty verdict.[13]

KRS 510.110 provides that a person is guilty of first-degree sexual abuse when: (a) he subjects another person to sexual contact by forcible compulsion; or (b) he subjects another person to sexual contact who is incapable of consent because he is physically helpless, less than twelve years old, or mentally handicapped. KRS 510.010(7) defines "sexual contact" to mean "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desire of either party[.]"

■■■ Boone first argues that the Commonwealth failed to prove that any touching which occurred was for the purpose of sexual gratification. He relies heavily on his own testimony in which he admitted that he brushed his hand against J.H.'s crotch once, but only inadvertently. However, J.H. gave a substantially different account of these events, and Detective Royce testified that Boone admitted that the contact was intentional. Although the evidence on this point was conflicting, there clearly was sufficient evidence for the jury to conclude that the contact was for the purpose of sexual gratification.

■■■ Boone next argues that the Commonwealth failed to prove that J.H. was physically helpless when any sexual contact occurred. The Commonwealth did not argue that Boone subjected J.H. to sexual contact by forcible compulsion. Furthermore, J.H. was not mentally incapacitated, and J.H. was not "less than twelve years old"—he was twelve years old at the time of the alleged offense. Thus, the Commonwealth was required to prove that J.H. was incapable of giving consent because he was physically helpless.

KRS 510.010(6) defines "physically helpless" to mean "that a person is unconscious or for any other reason is physically unable to communicate unwillingness to an act." The statute goes on to add that " [p]hysically helpless' also includes a person who has been rendered unconscious or for any other reason is physically unable to communicate an unwillingness to an act as a result of the influence of a controlled substance or legend drug[.]" The commentary to this statute notes that this definition "would include the situation where a person is in a deep sleep as a result of barbiturates, unconscious because

---

**9.** *Mills v. Commonwealth*, Ky., 996 S.W.2d 473, 485 (1999).

**10.** *Johnson v. Commonwealth*, Ky., 105 S.W.3d 430, 441 (2003).

**11.** KRS 500.070.

**12.** *Commonwealth v. Benham*, Ky., 816 S.W.2d 186 (1991).

**13.** *Id.* at 187.

of excessive alcohol consumption, or a total paralytic." [14]

Boone points out that J.H. was not restrained, incapacitated, intoxicated, or drugged at the time of the alleged contact. Rather, during the incident in question, J.H. was merely sleeping, and J.H. testified that he woke up when the contact began.[15] Consequently, Boone contends that J.H. was not "physically helpless" within the meaning of the statute. The Commonwealth responds that a normally sleeping person is "unconscious" and therefore incapable of giving consent to sexual contact.

We find no Kentucky cases which directly address this question. Furthermore, we note that some comparable statutes from other states expressly include a sleeping victim in their definition of "physically helpless." [16] The omission from Kentucky's version of the definition might suggest a legislative intention to exclude a victim who is normally sleeping from the definition of physically helpless.

However, a number of statutes from different states also do not include sleep as part of the definition of "physically helpless." Nevertheless, those jurisdictions have consistently concluded that the statutory definition of "physically helpless" is broadly worded to encompass a person who is sleeping, since such a person is temporarily unconscious or is otherwise physically unable to communicate unwillingness to act.[17] We find the reasoning in these cases to be persuasive.

The definition of "physically helpless" is primarily concerned with the victim's physical inability to flee or to consent to sexual contact. Although sleep may not always be a fully unconscious condition, "[i]t is axiomatic that sleep is the antithesis of awareness. It is that periodic state of rest in which consciousness is suspended. Whether induced by drug, or achieved by normal processes, being in the state of sleep renders one unable of making a conscious choice." [18] Given the evidence in the present case, the jury could reasonably find that J.H. was asleep at the time the sexual contact began and therefore incapable of giving any consent to it. Therefore, the trial court did not err in denying Boone's motion for a directed verdict on the charge of first-degree sexual abuse.

■ Lastly, Boone argues that the trial court abused its discretion when it refused to probate his sentence. Prior to final sentencing, a sexual offender risk assessment report was prepared. The report concluded that Boone was amenable to sexual offender treatment, that he did not pose a high risk of offending again,

---

**14.** *See also Johnson v. Commonwealth,* Ky., 864 S.W.2d 266 (1993) (victim unconscious due to alcohol consumption).

**15.** At trial, J.H. testified that Boone sometimes gave him "vitamin pills", and after taking those pills he felt drowsy. The Commonwealth suggests that these pills were some kind of sedative. However, there was no evidence concerning the nature of these pills. Furthermore, the Commonwealth concedes that the trial court's instruction to the jury defining the term "physically helpless" did not include the latter portion of the definition.

**16.** *See, e.g.,* Colo.Rev.Stat. § 18–3–401(3); Mich. Comp. Laws § 750.520a(k); Fla. Stat. § 794.011(1)(e); R.I. Gen. Laws § 11–37–1(6); Tenn.Code Ann. § 39–13–501(5).

**17.** *See State v. Stevens,* 311 Mont. 52, 53 P.3d 356, 361–63 (2002); *People v. Copp,* 169 Misc.2d 757, 758–59, 648 N.Y.S.2d 492 (N.Y.City Ct., 1996); *State v. Rush,* 278 N.J.Super. 44, 650 A.2d 373, 374–75 (N.J.Super.Ct.App.Div., 1994); *Woodward v. Commonwealth,* 12 Va.App. 118, 402 S.E.2d 244, 245–46 (1991); *State v. Puapuaga,* 54 Wash. App. 857, 776 P.2d 170 (1989); and *State v. Moorman,* 320 N.C. 387, 358 S.E.2d 502 (1987).

**18.** *People v. Copp,* 648 N.Y.S.2d at 493.

and that he did not appear to pose an immediate threat to public safety. Boone asserted that he would probably have to serve out his sentence if he were incarcerated, due to the length of time it would take to enroll in and then complete the two-year program. Boone also pointed out that he had never before been convicted of a crime other than a few minor traffic violations, he had been honorably discharged from the military and has a good record of community service, and that 190 people from the community had vouched for his good character. Boone also noted that he still lives with his aged parents and they rely on him for many household tasks. Lastly, Boone contended that the jury verdict was inconsistent—an acquittal on the most serious and specific felony and a conviction on the least serious and most general felony. Under the circumstances, Boone asserted that he was a good candidate for probation.

The trial court noted all of these factors, but nonetheless denied Boone's request for probation. Based on several comments by the trial judge during the sentencing hearing, Boone asserts that the trial court erroneously concluded that it lacked discretion to grant probation. We disagree. Of course, a trial court has substantial discretion to grant probation based on the statutory criteria set out in KRS 533.010(2).[19] When the trial judge's statements are considered in context, it is clear that the trial

court did not improperly circumscribe its discretion regarding probation.[20] The trial court obviously struggled with the question of probation, but ultimately found that granting probation to Boone would unduly depreciate the seriousness of the crime of which he had been convicted.[21] This conclusion was supported by substantial evidence and did not constitute an abuse of discretion.

Accordingly, the judgment of conviction by the Mason Circuit Court is affirmed.

ALL CONCUR.

---

**19.** *Turner v. Commonwealth*, Ky., 914 S.W.2d 343, 347–48 (1996).

**20.** Near the conclusion of sentencing hearing, the court stated:

> I am going to say to you, however, that as difficult as I find it, I don't think I have any choice but to rely on what the jury decided because it is in fact their province to do that, and that has been a part of the system of government in the United States since day one, and in England years before that. I feel like that the offense with which you were charged and now have been found

guilty is so serious that I cannot—in spite of the fact that I might want to, I cannot send the message to this community that it is in any way acceptable to molest a child, and therefore I—I cannot probate you at this time, all right. I wish it could be otherwise. I don't think I can do my job properly and grant probation.

Transcript of Sentencing, January 3, 2003, pp. 26–27.

**21.** *See* KRS 533.010(2)(c).