RENDERED: FEBRUARY 15, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0504-MR

KORY E. HELMICK                                                     APPELLANT

V.
                ON APPEAL FROM GREENUP CIRCUIT COURT
                HONORABLE BRIAN C. MCCLOUD, JUDGE
                NO. 20-CR-00122

COMMONWEALTH OF KENTUCKY                               APPELLEE

**OPINION OF THE COURT BY JUSTICE KELLER**

**<u>AFFIRMING</u>**

A Greenup County jury convicted Kory E. Helmick of two counts of sodomy in the third degree, one count of sodomy in the first degree, one count of sexual abuse in the first degree, and one count of unlawful use of an electronic communication system to procure a minor to engage in sexual or other prohibited activity. Helmick received a total sentence of thirty-one years in prison. This appeal followed as a matter of right. *See* KY. CONST. § 110(2)(b). Having reviewed the record and the arguments of the parties, we affirm the Greenup Circuit Court.

# I. BACKGROUND

In March 2017, when J.K.[1] was just 13 years old, his grandfather dropped him off at the local Cabinet for Health and Family Services, Department of Community Based Services (the Cabinet) office, and J.K. entered foster care. His very first foster placement was with Kory Helmick and Helmick's husband, Matthew Biggs.[2] He remained with Helmick and Biggs from March 14, 2017, to September 20, 2017, when he was placed in another home. Over the next few years, J.K. was moved from foster home to foster home, in part because of his own behaviors. Nevertheless, he returned to Helmick's home two additional times after his initial placement there. These placements occurred from December 1, 2017, to April 26, 2018, and again from July 30, 2018, until November 8, 2018. He requested to return each time.

On November 8, 2018, J.K. was placed with Melanie Bramlett, who lived across the street from Helmick. He stayed with Bramlett until April 11, 2019, when he was placed with Biggs's parents. He remained there until November 25, 2019, when he was placed back with Bramlett. Aside from one day in a detention center, J.K. continued to live with Bramlett through at least the trial in this matter. By that time, he had turned 19 years old and had recommitted to the Cabinet, meaning that he remained in the custody to the Cabinet in

---

[1] We identify the victim by his initials to help protect his privacy.

[2] Along with Helmick, Biggs was also indicted and tried based on the events laid out in this Opinion. Biggs's convictions are not currently before the Court, and we address Biggs's actions and resulting convictions only as necessary to provide context.

order to receive assistance in establishing independent living arrangements. *See* KRS 610.110(6).

Late in the evening on March 31, 2020, J.K. disclosed to Bramlett that Helmick and Biggs had sexually abused him while he was placed in their home. This disclosure was prompted by sexually explicit text messages that J.K. had been receiving from Helmick. The text messages were turned over to Kentucky State Police, and J.K. participated in a forensic interview, during which he made further disclosures. Helmick and Biggs were eventually indicted for several sex offenses perpetrated against J.K. and tried together before a jury.

At trial, J.K. testified that Helmick's first act of sexual abuse occurred when J.K. was 13 years old. During this incident, Helmick used his hands to touch J.K.'s penis. J.K. further testified that when he was 13 years old, Helmick used his mouth to touch J.K.'s penis. He testified that all of this occurred in the bedroom that Helmick and Biggs shared.

J.K. testified that these same actions also occurred when he was 14 and 15 years old. He further testified that on at least one occasion when he was 15 years old, Helmick instructed J.K. to put his mouth on Helmick's penis, and J.K. did so. J.K. also stated that he was made to use his mouth and hands to touch Biggs's penis. Finally, he testified that on one occasion, Helmick instructed him to have "penetrative sex" with Biggs while Helmick watched and masturbated.

J.K. testified that beginning around the time he was 14 and a half or 15 years old, alcohol use became a routine part of the abuse. He stated that

3

Helmick would give him alcohol, get him intoxicated, and then abuse him. On cross-examination, he explained that while he was not physically forced to perform these acts, he was sometimes "incapacitated" and "incapable of moving" due to alcohol ingestion.

The jury found Helmick guilty of two counts of sodomy in the third degree, one count of sodomy in the first degree, one count of sexual abuse in the first degree, and one count of unlawful use of an electronic communication system to procure a minor to engage in sexual or other prohibited activity. The jury recommended a total sentence of thirty-one years in prison, and the trial court sentenced Helmick consistently with that recommendation. This appeal followed.

## II. ANALYSIS

On appeal to this Court, Helmick alleges the trial court made three errors, each of which requires reversal. First, he alleges that the trial court erred in denying his Motion to Continue the trial. Second, he alleges that insufficient proof was adduced at trial to support the conviction of sodomy in the first degree. Finally, he alleges his right to be free from double jeopardy was violated when he was convicted of both sodomy in the first degree and sodomy in the third degree. We address each contention in turn.

### A. Motion to Continue

Helmick first argues that the trial court erred in denying his motion for a continuance. Helmick adequately preserved this issue through his pretrial motion to continue the trial. "[W]hether to grant a motion for continuance is

4

well within the sound discretion of the trial court." *Hunter v. Commonwealth,* 869 S.W.2d 719, 720 (Ky. 1994). "[A] trial court's ruling on a continuance motion will remain undisturbed unless it appears to the appellate court that, in overruling the motion, there was a clear abuse of judicial discretion such as to deny the accused substantial justice." *Id.* at 721. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson,* 11 S.W.3d 575, 581 (Ky. 2000).

Helmick was indicted on September 10, 2020. On November 2, 2020, the trial court entered an order that the Commonwealth was to preserve all electronic devices, including cell phones, and was to make those devices available to defense for inspection "upon request." On November 25, 2020, Helmick's attorney sent a letter to the Commonwealth's Attorney indicating that he had retained an expert to inspect J.K.'s cell phone and that the expert could do so on December 8, 2020. Evidently, however, the inspection did not occur on that date. Instead, on May 13, 2022, the trial court entered an agreed order that the defense's expert could conduct a forensic analysis of J.K.'s cell phone on May 24, 2022. On that date, the defense expert found that the phone's battery had been corrupted so that the phone could not be powered on. Because of this, the expert could not conduct the analysis until the battery was replaced.

On June 28, 2022, over a month after the unsuccessful phone analysis, Helmick filed a Motion to Continue. He sought to continue the jury trial, which

5

was scheduled for July 11, 2022, just two weeks later. In his motion, Helmick stated that his expert believed that "there had been sufficient developments in technology" since the time Kentucky State Police had analyzed the phone to allow him to conduct a "deeper dive" into the phone and potentially retrieve information that had been deleted from the phone. Helmick further explained that the evaluation turned out to be "much more costly and time-consuming" than originally expected and that there was a delay in securing the funding to pay for the expert's services. The motion, however, was not accompanied by any affidavits.

The trial court held a hearing on Helmick's motion on June 30, 2022. At this hearing, Helmick stated that his expert could analyze the phone on July 25, 2022, and that it would take at least a month after the analysis for the expert to generate a report. Helmick stated that he would then need to turn the report over to the Commonwealth's Attorney, who would also need time to review it prior to a new trial date. When pressed by the trial court regarding the helpful information he believed would be found on the phone, Helmick would only state that he believed there may be beneficial conversations on the phone, including multiple requests from J.K. to return to Helmick's home. Ultimately, the trial court noted that Helmick had two years to analyze the phone but failed to do so and denied Helmick's Motion to Continue.

Under Kentucky Rule of Criminal Procedure (RCr) 9.04,

The court, upon motion and sufficient cause shown by either party, may grant a postponement of the hearing or trial. A motion by the defendant for a postponement on account of the absence of evidence *may be made only upon affidavit* showing the materiality

6

of the evidence expected to be obtained, and that due diligence has been used to obtain it. . . .

(Emphasis added). The language of the rule makes it mandatory that any motion to continue made on the basis of "absence of evidence" be accompanied by an "affidavit showing the materiality of the evidence . . . and that due diligence has been used to obtain it." *Jeter v. Commonwealth*, 531 S.W.3d 488, 497 (Ky. 2017); RCr 9.04. In this case, Helmick's motion was not accompanied by the required affidavit, and thus, the trial court "had no alternative but to" deny the motion. *Id.* Accordingly, the trial court did not abuse its discretion in denying Helmick's Motion to Continue.

**B. Sodomy in the First Degree**

Helmick next argues that he was entitled to a directed verdict on the charge of sodomy in the first degree. The parties dispute whether this argument was properly preserved. However, we need not definitively determine preservation because the trial court did not err in denying Helmick's motion for a directed verdict on the charge of sodomy in the first degree.

Our directed verdict standard has been firmly established in *Commonwealth v. Benham*:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purposes of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

7

816 S.W.2d 186, 187 (Ky. 1991). "So long as the Commonwealth produces more than a mere scintilla of evidence to support the charges, a defendant's motion for directed verdict should be denied." *Taylor v. Commonwealth*, 617 S.W.3d 321, 324 (Ky. 2020). "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Benham*, 816 S.W.3d at 187.

Pursuant to Kentucky Revised Statute (KRS) 510.070(1)(b)1., "[a] person is guilty of sodomy in the first degree when . . . [h]e engages in deviate sexual intercourse with another person who is incapable of consent because he . . . [i]s physically helpless." Under KRS 510.010(6),

> "Physically helpless" means that a person is unconscious or for any other reason is physically unable to communicate unwillingness to an act. "Physically helpless" also includes a person who has been rendered unconscious or for any other reason is physically unable to communicate an unwillingness to an act as a result of the influence of a controlled substance or legend drug[.]

Helmick asserts that the Commonwealth produced insufficient evidence that J.K. was physically helpless to withstand his motion for a directed verdict. We disagree.

At trial, J.K. testified that beginning around the age of 14 and a half or 15, his alcohol use became a routine part of the sexual abuse that he endured. He testified that he was intoxicated multiple times when Helmick and Biggs abused him. On cross-examination, J.K. was asked about whether force was ever used. He responded by saying that he believed that by serving him alcohol,

8

Helmick and Biggs forced him to engage in the sexual acts. Specifically, J.K. testified that he was "incapacitated" and "incapable of moving." J.K. implied that he was in this state on at least some occasions when he was sexually abused by Helmick and Biggs.

This Court has had few occasions on which to analyze the amount or type of proof needed to show that a victim of a sexual crime was physically helpless. Both parties, therefore, rely on the Court of Appeals' opinion in *Boone v. Commonwealth*, 155 S.W.3d 727 (Ky. App. 2004). In that case, the Court of Appeals cited to a Legislative Research Commission note that accompanies the statute which explains that physical helplessness "would include the situation where a person is in a deep sleep as a result of barbiturates, unconscious because of excessive alcohol consumption, or a total paralytic." *Id.* at 730–31. However, the court further stated that "[t]he definition of 'physically helpless' is primarily concerned with the victim's physical inability to flee or to consent to sexual contact." *Id.* at 731. We agree with the Court of Appeals' interpretation of KRS 510.010(6) and apply it to the facts of this case.

J.K.'s testimony that he was "incapacitated" and "incapable of moving" due to alcohol intoxication was certainly more than a mere scintilla of evidence that he was physically helpless at the time Helmick sodomized him. If he was incapacitated or unable to move, then a reasonable jury could conclude he would not have had the ability to flee, to consent, or to communicate his unwillingness to consent. Although there may have been evidence elicited at trial that weighed against a finding that J.K. was physically helpless at the time

9

he was sodomized, we cannot conclude that "under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt[.]" *Benham*, 816 S.W.3d at 187. Accordingly, the trial court did not err in denying Helmick's motion for a directed verdict on the charge of sodomy in the first degree.

**C. Double Jeopardy**

Finally, Helmick argues that his convictions for sodomy in the first degree and sodomy in the third degree arose from the same act and therefore violated his constitutional right to be free from double jeopardy. Helmick was convicted of two counts of sodomy in the third degree, and it is unclear to this Court which conviction he alleges violated his constitutional rights. Therefore, in the interest of ensuring those rights are protected, we review both convictions for sodomy in the third degree in comparison to his conviction for sodomy in the first degree, noting that "double jeopardy violations are treated as an exception to the general rules of preservation." *Brooks v. Commonwealth*, 217 S.W.3d 219, 221 (Ky. 2007).

"Section 13 of the Constitution of this Commonwealth and the Fifth Amendment to the United States Constitution forbid that a person be twice put in jeopardy *for the same offense*." *Hennemeyer v. Commonwealth*, 580 S.W.2d 211, 214 (Ky. 1979) (emphasis added). Inherent in this prohibition, however, is that the two convictions arise from the same act. Only when "the same act or transaction constitutes a violation of two distinct statutory provisions" must we determine if "there are two offenses or only one." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

"The question of when an act or series of acts constitute a single offense or multiple offenses is not new or novel[.]" *Hennemeyer*, 580 S.W.2d at 214. Recently, we sought to clarify this distinction.

> The difference between multiple, independent criminal acts and one continuous course of criminal conduct generally is "a sufficient break in the conduct and time so that the acts constituted separate and distinct offenses." *Welborn v. Commonwealth*, 157 S.W.3d 608, 612 (Ky. 2005). This break need only be "a cognizable lapse in his course of conduct during which the defendant could have reflected upon his conduct, if only momentarily, and formed the intent to commit additional acts." *Kiper v. Commonwealth*, 399 S.W.3d 736, 745 (Ky. 2012).

*Johnson v. Commonwealth*, 676 S.W.3d 405, 412 (Ky. 2023). In the case at bar, a review of the jury instructions makes clear that each conviction was based on a single, independent criminal act, and thus Helmick's multiple convictions did not violate the constitutional prohibition against double jeopardy.

Helmick was found guilty of sodomy in the first degree under jury instruction number 18. That instruction stated as follows:

> You will find the Defendant Kory E. Helmick guilty of First-Degree Sodomy under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on or between March 2017 and November 2019, and before the finding of the Indictment herein, Defendant Kory E. Helmick engaged in deviate sexual intercourse with the minor child, J.K., *when J.K. was 15 years old, by placing his mouth on J.K.'s penis*;
>
> AND
>
> B. That at the time of such intercourse J.K. was physically helpless.

11

(Emphasis added). Helmick was found guilty of one count of sodomy in the third degree under jury instruction number 17, which stated,

> You will find the Defendant Kory E. Helmick guilty of Third-Degree Sodomy under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on or between March 2017 and November 2019, and before the finding of the Indictment herein, Defendant Kory E. Helmick engaged in deviate sexual intercourse with J.K. by placing his mouth on J.K.'s penis *when J.K. was 14 years of age*;
>
> AND
>
> B. That at the time of such intercourse, the Defendant Kory E. Helmick was 21 years of age or older and J.K. was less than 16 years of age.

(Emphasis added). Finally, Helmick was found guilty of a second count of sodomy in the third degree under jury instruction number 19. That instruction stated as follows:

> You will find the Defendant Kory E. Helmick guilty of Third-Degree Sodomy under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on or between March 2017 and November 2019, and before the finding of the Indictment herein, Defendant Kory E. Helmick engaged in deviate sexual intercourse with the minor child, J.K. *by placing his penis in the mouth of J.K.*;
>
> AND
>
> B. That at the time of such intercourse, the Defendant Kory E. Helmick was 21 years of age or older and the minor child J.K. was less than 18 years old;
>
> AND
>
> C. That at the time of such intercourse the Defendant Kory E. Helmick was providing J.K. a foster family home.

12

(Emphasis added). The details included in these jury instructions illustrate the distinction between the charged offenses.

In simple terms, Helmick was convicted of sodomy in the first degree for placing his mouth on J.K.'s penis when J.K. was 15 years old. He was convicted of sodomy in the third degree under instruction number 17 for placing his mouth on J.K.'s penis when J.K. was 14 years old. These two instructions could have not referred to the same criminal act because it would be impossible for J.K. to be both 14 years old and 15 years old at the same time. Thus, Helmick could not have been convicted twice for the same offense under jury instructions 17 and 18.

We now turn to Helmick's conviction for sodomy in the third degree under jury instruction 19 and compare it to his conviction for sodomy in the first degree. As previously stated, Helmick was convicted of sodomy in the first degree for placing his mouth on J.K.'s penis. Under jury instruction 19, he was convicted of sodomy in the third degree for placing his penis in J.K.'s mouth. Even assuming these two acts occurred during the same sexual interaction, there certainly was a "sufficient break" in Helmick's conduct "during which [he] could have reflected . . . , if only momentarily, and formed the intent to commit additional acts." *Johnson*, 676 S.W.3d at 412 (quoting *Kiper*, 399 S.W.3d at 745). Accordingly, the instructions described two separate criminal acts, and there was no double jeopardy violation.

13

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Greenup Circuit Court.

VanMeter, C.J.; Bisig, Keller, Lambert, Nickell and Thompson, JJ., sitting. All concur. Conley, J., not sitting.

COUNSEL FOR APPELLANT:

Robert T. Renfroe
McGinnis Leslie

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Rachel A. Wright
Assistant Solicitor General